Per Curiam.
 

 In Docket No. 201367, plaintiff appeals by leave granted a Wayne Circuit Court order granting defendants’ motions to change venue from Wayne County to Oakland County. In Docket No. 213889, plaintiff appeals as of right an Oakland Circuit Court order dismissing the case with prejudice on the basis of plaintiff’s failure to comply with the court’s discovery orders. The appeals were consolidated. We affirm.
 

 On August 21, 1996, plaintiff filed the instant legal malpractice action in the Wayne Circuit Court against Scott E. Combs and Woll, Crowley, Berman, Olsman & Nolan, P.C. Plaintiff had retained defendants to rep
 
 *19
 
 resent her in a wrongful discharge action against Jostens, Incorporated, Jostens Learning Corporation, and James Dredge. In November 1992, defendants filed plaintiffs underlying wrongful discharge action in Wayne County. In December 1992, plaintiffs action was removed to the United States District Court, Eastern District of Michigan, Southern Division. According to plaintiff, Jostens, Inc., and Dredge were subsequently dismissed from the case because defendants failed to properly serve them and defendants failed to inform her of these dismissals. Plaintiff also alleged that defendants failed to timely object to a United States magistrate’s recommendation that plaintiff’s case should be dismissed. Plaintiff further asserted that the United States District Court ultimately dismissed her case with prejudice because defendants failed to provide responses to interrogatories and requests to produce as ordered and because defendants failed to appear and failed to advise plaintiff to appear at a scheduled deposition. Defendants sought and obtained a change of venue transferring plaintiff’s instant malpractice claim from Wayne County to Oakland County. The Oakland Circuit Court eventually dismissed plaintiff’s claim with prejudice on the basis of plaintiff’s repeated discovery violations.
 

 i
 

 Plaintiff first contends that the Wayne Circuit Court erred in transferring venue to Oakland County. We review a trial court’s decision concerning a motion for a change of venue to determine whether it was clearly erroneous.
 
 Huhn v DMI, Inc (On Remand),
 
 215 Mich App 17, 18; 544 NW2d 719 (1996).
 

 
 *20
 
 Plaintiff’s action is one for legal malpractice, which is a tort.
 
 Coleman v Gurwin,
 
 443 Mich 59, 62; 503 NW2d 435 (1993). In tort actions, venue is controlled by MCL 600.1629(1); MSA 27A. 1629(1). This subsection provides in relevant part as follows:
 

 (1) Subject to subsection (2), in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, all of the following apply:
 

 (a) The county in which
 
 the original injury occurred
 
 and in which either of the following applies is a county in which to file and try the action:
 

 (i) The defendant resides, has a place of business, or conducts business in that county.
 

 (ii) The corporate registered office of a defendant is located in that county.
 

 (b) If a county does not satisfy the criteria under subdivision (a), the county in which
 
 the original injury occurred
 
 and in which either of the following applies is a county in which to file and try the action:
 

 (i) The plaintiff resides, has a place of business, or conducts business in that county.
 

 (ii) The corporate registered office of a plaintiff is located in that county. [Emphasis added.]
 

 Where, as in this case, venue is established by statute, this Court’s primary objective is to effectuate legislative intent without harming the plain wording of the act.
 
 Keuhn v Michigan State Police,
 
 225 Mich App 152, 153; 570 NW2d 151 (1997).
 

 The Supreme Court in
 
 Coleman
 
 addressed the proper venue for a legal malpractice action pursuant to MCL 600.1629(1)(a); MSA 27A.1629(1)(a). At the time of the Supreme Court’s
 
 Coleman
 
 decision, MCL 600.1629(1)(a); MSA 27A.1629(1)(a) provided for tort action venue in “ ‘[a] county in which
 
 all or a part of
 
 
 *21
 

 the cause of action
 
 arose . . . Coleman,
 
 swpra
 
 at 62. Although the Court’s interpretation of the venue statute therefore is not controlling in the instant case, the Court’s analysis regarding the nature of legal malpractice claims remains instructive. The Court observed that while a plaintiff in a legal malpractice action must show that but for the attorney’s alleged malpractice he would have been successful in the underlying suit, the “suit within a suit” is not a part of a legal malpractice action in and of itself.
 
 Id.
 
 at 63, 66. The Court explained that because legal malpractice is a separate, distinct cause of action, its venue is determined by the location of the primary suit, i.e., where the alleged legal negligence occurred.
 
 Id.
 
 at 66. Although the
 
 Coleman
 
 plaintiff’s underlying wrongful discharge cause of action arose in Wayne County, the Court concluded that this venue was improper with respect to the plaintiff’s legal malpractice action because the plaintiff’s legal malpractice claim was premised solely on allegedly negligent advice given on soil beyond the boundaries of Wayne County.
 
 Id.
 
 at 66-67.
 

 Wayne County constituted the proper venue for plaintiff’s instant legal malpractice action because plaintiff’s alleged injury occurred in Wayne County. Plaintiff’s underlying wrongful discharge suit was initially filed in the Wayne Circuit Court and was then removed to the United States District Court. As the
 
 Coleman
 
 Court noted, this factor alone does not control the venue of plaintiff’s legal malpractice action. Unlike the
 
 Coleman
 
 plaintiff, however, the instant plaintiff has set forth several instances of defendants’ alleged legal negligence that likewise occurred in Wayne County. Plaintiff’s legal malpractice complaint
 
 *22
 
 alleged that the United States District Court dismissed her wrongful discharge case with prejudice because defendants failed to comply with district court discovery orders, failed to appear and to advise plaintiff to appear at a scheduled deposition, failed to object to the magistrate’s recommendation to dismiss plaintiff’s case, and generally failed to “adequately and properly manage” plaintiff’s case. Plaintiff also alleged that Jostens, Inc., and Dredge were dismissed from her lawsuit because defendants failed to serve them and that defendants failed to disclose that information to her. Because defendants’ allegedly negligent omissions took place in Wayne County, Wayne County represents the situs of plaintiff’s injury and the appropriate venue prescribed by MCL 600.1629(1); MSA 27A. 1629(1).
 
 [1]
 

 Coleman, supra
 
 at 66. The Wayne Circuit Court erred to the extent that it equated the place of plaintiff’s injury with the location where the parties initiated their attorney-client relationship. Therefore, we conclude that the Wayne Circuit Court improperly transferred venue to Oakland County.
 

 Although venue in Oakland County was improper, the Michigan Legislature statutorily has provided that “[n]o order, judgment, or decree shall be void or voidable solely on the ground that there was improper venue.” MCL 600.1645; MSA 27A.1645. Therefore, the Oakland Circuit Court’s ultimate order dismissing plaintiff’s case cannot be set aside merely on the basis that the Wayne Circuit Court improperly trans
 
 *23
 
 ferred venue, and we must proceed to address plaintiff’s further allegations of error.
 

 n
 

 Plaintiff also argues that the Oakland Circuit Court lacked jurisdiction to enter its order dismissing her legal malpractice claim. A challenge to subject-matter jurisdiction may be raised at any time, even if raised for the first time on appeal.
 
 Smith v Smith,
 
 218 Mich App 727, 729-730; 555 NW2d 271 (1996). Jurisdiction is a question of law that this Court reviews de novo.
 
 Jeffrey v Rapid American Corp,
 
 448 Mich 178, 184; 529 NW2d 644 (1995).
 

 Plaintiff argues that pursuant to MCR 7.205(D)(3) and MCR 7.203 this Court, from the time it granted leave regarding plaintiff’s interlocutory application for leave to appeal the venue issue on April 22, 1997, possessed exclusive jurisdiction over the instant case. Therefore, according to plaintiff, the Oakland Circuit Court had no authority to subsequently order dismissal of plaintiff’s case. Throughout her brief on appeal, plaintiff continually describes this Court’s jurisdiction as “exclusive” and cites several cases for the proposition that the filing of a claim of appeal or this Court’s granting of leave to appeal automatically precludes a lower court from proceeding in any respect whatsoever concerning any aspect of the action appealed from. Each case cited by plaintiff involved a trial court’s attempt to impose costs or fees after a final judgment or order had been entered and after a claim of appeal had been filed, when the final judgment or order appealed from did not specifically contemplate a subsequent imposition of fees. See
 
 Co-Jo, Inc v Strand,
 
 226 Mich App 108, 118-119; 572 NW2d 251
 
 *24
 
 (1997);
 
 Admiral Ins Co v Columbia Casualty Ins Co,
 
 194 Mich App 300, 314-315; 486 NW2d 351 (1992);
 
 Wilson v General Motors Corp,
 
 183 Mich App 21, 41; 454 NW2d 405 (1990);
 
 Vallance v Brewbaker,
 
 161 Mich App 642, 647-648; 411 NW2d 808 (1987). As these cases illustrate, when a claim of appeal involving a final order (see MCR 7.203[A][1]) is filed, the trial court is generally precluded from revisiting the matter.
 
 [2]
 
 By applying for leave to appeal to this Court the Wayne Circuit Court’s order transferring venue, plaintiff sought an interlocutory appeal, an appeal “limited to the issue[] raised in the application and supporting brief.” MCR 7.205(D)(4). Accordingly, this Court’s jurisdiction over plaintiffs legal malpractice claim extended only to the limited issue whether the Wayne Circuit Court had properly transferred venue.
 

 Once a claim of appeal has been filed or this Court has granted leave to appeal, the trial court is divested of its jurisdiction to set aside or amend the order appealed from “except by order of the Court of Appeals, by stipulation of the parties, or as otherwise provided by law.” MCR 7.208(A). An appeal to this Court does not, however, stay the effect of the trial court’s order unless this Court or the trial court orders a stay. MCR 7.209(A);
 
 Chrysler Corp v Home Ins Co,
 
 213 Mich App 610, 612; 540 NW2d 485 (1995).
 

 Therefore, plaintiff’s appeal did not stay the effect of the order changing venue because plaintiff never sought, and neither this Court nor the trial court ever ordered, a stay. MCR 7.209(A);
 
 Chrysler Corp, supra.
 
 Accordingly, the Oakland Circuit Court, while explicitly precluded pursuant to MCR 7.208(A) from modi
 
 *25
 
 fying or amending the order transferring venue that was the subject of plaintiffs interlocutory appeal, did have authority to oversee further proceedings with respect to plaintiffs claim while plaintiffs interlocutory appeal of the order changing venue was pending. We note that the Oakland Circuit Court in no manner interfered with this Court’s limited jurisdiction over the venue issue because it never attempted to set aside or otherwise modify the venue order from which plaintiff appealed. Because the Oakland Circuit Court did not interfere with this Court’s jurisdiction over plaintiff’s interlocutory appeal, we conclude that plaintiff’s assertion that the court acted with no authority is without merit.
 
 [3]
 

 m
 

 Lastly, plaintiff contends that the trial court erred in dismissing her complaint on the basis of her expert’s failure to initially specify the various facts on which he founded his opinions when plaintiff had otherwise substantially complied with defendants’ discovery demands and that the record did not reflect that plaintiff wantonly or wilfully attempted to avoid
 
 *26
 
 discovery. We review a trial court’s imposition of discovery sanctions for an abuse of discretion.
 
 Traxler v Ford Motor Co,
 
 227 Mich App 276, 286; 576 NW2d 398 (1998).
 

 The Michigan Court Rules at MCR 2.313(B)(2)(c) explicitly authorize a trial court to enter an order dismissing a proceeding or rendering a judgment by default against a party who fails to obey an order to provide discovery.
 
 Thorne v Bell,
 
 206 Mich App 625, 632; 522 NW2d 711 (1994). The trial court should carefully consider the circumstances of the case to determine whether a drastic sanction such as dismissing a claim is appropriate.
 
 Richardson v Ryder Truck Rental, Inc,
 
 213 Mich App 447, 451; 540 NW2d 696 (1995). Severe sanctions are generally appropriate only when a party flagrantly and wantonly refuses to facilitate discovery, not when the failure to comply with a discovery request is accidental or involuntary.
 
 Traxler, supra.
 
 The record should reflect that the trial court gave careful consideration to the factors involved and considered all its options in determining what sanction was just and proper in the context of the case before it.
 
 Dean v Tucker,
 
 182 Mich App 27, 32; 451 NW2d 571 (1990). The factors that should be considered in determining the appropriate sanction include the following:
 

 (1) [W]hether the violation was wilful or accidental; (2) the party’s history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the [other party]; (4) actual notice to the [other party] of the witness and the length of time prior to trial that the [other party] received such actual notice; (5) whether there exists a history of [the party’s] engaging in deliberate delay; (6) the degree of compliance by the [party] with other provisions of the court’s order; (7) an attempt by the [party] to
 
 *27
 
 timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice.
 
 [Id.
 
 at 32-33.]
 

 A discussion of the facts preceding the instant trial court’s decision to impose the harsh sanction of dismissal is instructive. On March 6, 1997, defendant Combs filed in the Oakland Circuit Court a motion to dismiss plaintiff’s complaint, alleging that plaintiff had failed to timely respond to his discovery requests.
 
 [4]
 
 Combs stated that on November 21, 1996, plaintiff was served with his interrogatories and a notice for production of documents, but had failed to provide any response whatsoever and had not given any excuse for her failure to address Combs’ requests. Combs attached to the motion for dismissal three letters to plaintiff’s counsel, dated December 30, 1996, January 22, 1997, and February 19, 1997, in which defense counsel had repeated the requests for documents and interrogatory responses. On April 4, 1997, plaintiff responded to Combs’ motion to dismiss by indicating that she had provided more than five hundred pages of documents (on March 19, 20, and 31, 1997) and that she had agreed to answer Combs’ interrogatories by April 11, 1997.
 

 On April 8, 1997, Oakland Circuit Judge Barry L. Howard issued an order compelling discovery, specifically requiring that plaintiff “provide full and complete” responses to Combs’ interrogatories and' request for production within ten days of April 1, 1997.
 

 Subsequently, on April 16, 1997, Judge Howard heard the parties’ positions concerning the progres
 
 *28
 
 sion of discovery. Defense counsel acknowledged receiving some requested documents, but complained that plaintiff had yet to respond to interrogatories. Defense counsel also expressed his desire that the court order plaintiffs prompt deposition, asserting that plaintiff had failed to appear on a previously scheduled occasion in January 1997. Plaintiffs counsel responded that by now plaintiff had provided defendants over seven hundred pages of requested materials, and requested that, in light of plaintiffs position teaching school in California, the court order a summertime deposition date. Judge Howard from the bench ordered that plaintiff submit all requested documents by the end of that day, that plaintiff answer Combs’ interrogatories within ten days, and that plaintiff be deposed by June 16, 1997.
 

 On May 6, 1997, Combs filed a “Motion for Entry of Order and Dismissal” on the basis of plaintiff’s failure to comply with the court’s previous discovery orders. Plaintiff answered on May 28, 1997, reasserting that she had submitted over five hundred pages of materials, and additionally “had advised Defendant concerning Plaintiff’s willingness to produce for inspection and/or copying, a two inch (2”) file of handwritten voice mail messages which Plaintiff believed to be irrelevant . . . [and] as to numerous (21) cartons of materials involved in [the underlying suit] ... in San Diego, CA.” According to plaintiff, defendants had not advised her when they wanted to review the messages and cartons of materials. Plaintiff further stated that she had provided interrogatory responses and numerous attachments on April 12, 1997, and further supplemented these responses ón April 30, 1997. Finally, plaintiff alleged that defendants had failed to
 
 *29
 
 properly respond to plaintiffs notice of production of documents.
 

 On June 9, 1997, Judge Howard entered a written order reflecting the discovery periods he previously had imposed from the bench on April 16, 1997: that plaintiff produce all requested documents by April 16, 1997, and “full and complete supplemental answers to Defendant’s Interrogatories within ten (10) days of April 16, 1997,” and that plaintiff’s deposition be held by June 16, 1997.
 

 On November 18, 1997, Judge Howard entered another written order compelling discovery. The parties’ stipulated the entry of this order, which concerned Combs’ June 3, 1997, “Second Set of Interrogatories and Request for Production of Documents.” The order demanded that plaintiff supply full and complete responses within twenty-eight days of November 7, 1997.
 

 On December 22, 1997, Combs filed another motion to dismiss plaintiff’s action on the basis of plaintiff’s failure to comply with the requirements of the November 18, 1997, order, asserting that “Defendant cannot properly prepare a defense of this case without discovery responses from Plaintiff.”
 
 [5]
 
 Plaintiff apparently filed no response to this motion.
 

 The next hearing regarding the status of discovery occurred on February 4, 1998. Defense counsel complained that despite repeated efforts to accommodate plaintiff, plaintiff still had not answered November 1996 interrogatories thirteen and fourteen or June 1997 interrogatories nineteen through twenty-five and
 
 *30
 
 twenty-seven through thirty. With respect to interrogatories thirteen and fourteen, which requested the identity of plaintiffs intended experts and the experts’ opinions and bases therefor,
 
 [6]
 
 plaintiff’s counsel indicated that plaintiff had identified her legal malpractice expert, but that she had not yet secured the expert’s report. Judge Howard noted that mediation had been postponed twice already and that the case was initiated in 1996. Judge Howard then ordered once more that plaintiff reply to November 1996 interrogatory fourteen and June 1997 interrogatories nineteen through twenty-five and twenty-seven through thirty, concluding as follows:
 

 This matter is going to be put over until the 18th. If the matter is not answered fully and the Court feels they’re not answered fully and in good faith and if there’s not an expert opinion that is put forth in good faith, the Court to determine it, the Court will grant your motion. I’m putting it over for 18 [sic] days. In 14 days you’re going to file a praecipe right now on the 18th.
 

 
 *31
 
 * * *
 

 There will be no extensions on that date.
 

 Judge Howard entered a written order reflecting his oral instructions on Februaiy 6, 1998.
 

 The February 18, 1998, hearing focused on Combs’ November 1996 interrogatory fourteen. At the hearing, defense counsel indicated that between 4:30 and 5:00 P.M. on February 17, he received plaintiff’s response to interrogatory fourteen concerning plaintiff’s expert’s opinion, which response defense counsel deemed insufficient. Plaintiff’s counsel responded that the expert’s responses were diligently prepared in light of defendants’ recent depositions and that the information concerning the expert’s opinion was “responsive and complete.” Plaintiff’s counsel revealed that sometime after 5:00 P.M. the previous day his office received a fax from defense counsel expressing dissatisfaction with the response, but opined that, “[i]f there’s anything specific, I’d appreciate knowing from the defense attorney what specifically he believes is not complete and I’ll be glad to address it.” Judge Howard then examined on the record the response plaintiff had provided.
 

 
 *32
 
 1. There was professional negligence when the defendant [sic] failed to obey the discovery orders of the Court.
 

 2. The defendants’ professional negligence caused the dismissal of the underlying case.
 

 3. There is evidence to establish a prima facie case of wrongful discharge in the underlying case.
 

 4. There is evidence to establish a prima facie case of racial discrimination in the underlying case.
 

 5. There is evidence to establish a prima facie case of illegal retaliation.
 

 [Question
 
 G.]: The summary of grounds for each opinion of the expert.
 

 [Answer
 
 G.] The grounds for each opinion regarding professional negligence comes from the pleadings, including discovery orders, transcripts of the three hearings and the Court Opinions. The grounds for the Opinions regarding her underlying case come from the plaintiff’s deposition testimony and several documents, including a document to establish a cause of contract of employment.
 

 Judge Howard then expressed his opinion that plaintiff had failed to satisfy the February 4, 1998, order, concluding as follows:
 

 The Court would note that this answer in no way satisfies the specific Order of this Court which calls for specificity and facts. These are mere conclusions and statements which give to the defendant absolutely nothing. The Court has tremendous patience on discovery but enough is enough. The Court specifically—
 

 * * *
 

 The Court specifically finds that this Order [sic] fails to comply with the Order of the 4th of February, 1998. It does not satisfy the full and complete opinion ... it did not provide full and complete answers to discovery and accord
 
 *33
 
 ingly . . . this matter is dismissed with prejudice. I’ll grant the relief.
 

 On March 4, 1998, plaintiff filed a motion for reconsideration. Plaintiffs counsel asserted that he had acted in good faith and that dismissal was unwarranted. On March 9, 1998, plaintiff filed a second supplemental answer to interrogatory fourteen that more extensively discussed the facts underlying the expert’s opinions. Judge Howard on July 30, 1998, issued an order denying plaintiff’s motion.
 

 Given this background, we cannot conclude that the trial court improperly dismissed plaintiff’s claim. Interrogatory fourteen remained unsatisfactorily answered from November 21, 1996, when Combs served plaintiff his first set of interrogatories until Judge Howard ultimately ordered the dismissal of plaintiff’s claim on February 18, 1998, a period of approximately fifteen months. Within this period, Judge Howard issued no less than three written orders and two oral orders from the bench demanding that plaintiff respond to Combs’ first set of interrogatories and interrogatory fourteen. Despite these several court orders and Judge Howard’s explicit warnings that plaintiff’s failure to comply would result in dismissal of her claim, plaintiff repeatedly neglected to specifically answer interrogatory fourteen until after Judge Howard finally refused to extend plaintiff any more chances. Moreover, plaintiff’s failure to promptly respond to discovery requests extended beyond Combs’ initial interrogatories; as reflected in Judge Howard’s November 18, 1997, order, plaintiff did not timely address Combs’
 
 *34
 
 second set of interrogatories and request for production of documents.
 

 Plaintiff’s disobedience of several court orders over a fifteen-month period constitutes wilful or wanton behavior
 
 [7]
 
 and certainly was not accidental. Furthermore, plaintiff’s continued unresponsiveness to both Combs’ first and second sets of interrogatories evidences a history of refusing to comply with discovery requests and causing undue delay. Combs asserted that plaintiff’s discovery failures adversely affected his ability to adequately prepare his defense. Plaintiff’s expert’s opinion and the relevant facts on which he based the opinion would have represented the cornerstone of plaintiff’s claim of legal malpractice.
 
 Dean v Tucker,
 
 205 Mich App 547, 550; 517 NW2d 835 (1994) (“In professional malpractice actions, an expert is usually required to establish the standard of conduct, breach of the standard, and causation.”). While defendants had knowledge of plaintiff’s expert’s identity well before trial,
 
 [8]
 
 plaintiff failed to provide the specific facts that the expert took into account in concluding defendants committed legal malpractice. Defendants’ inability to ascertain plaintiff’s position rendered it impossible for them to properly defend themselves against plaintiff’s allegations. While plaintiff supplied extensive documentation in response to
 
 *35
 
 Combs’ requests for production of documents, we do not find that this provision of materials mitigates or otherwise renders insignificant plaintiff’s persistent failure to provide the specific bases for the expert’s opinions. It cannot be said under the circumstances of this case that plaintiff’s postdismissal supplement to the response to interrogatory fourteen qualifies as a timely cure of the defect. Our review of the record clearly undermines plaintiff’s assertion on appeal that “[t]here was not disobedience on Appellant’s behalf, much less ‘wilful’ disobedience.” The trial court hearing records make it abundantly clear that Judge Howard was aware of all these relevant circumstances when he finally resorted to the drastic sanction of dismissing plaintiff’s case.
 

 We do not accept plaintiff’s suggestion that the trial court could not resort to the severe sanction of dismissal without first having imposed a “trail of lesser sanctions.” Judge Howard’s extended tolerance of plaintiff’s inadequate discovery responses did not deprive him of the authority under MCR 2.313(B)(2)(c) to eventually determine that plaintiff’s disregard of her discovery obligations
 
 [9]
 
 over the course of more than one year at last warranted the ultimate sanction of dismissal. In light of plaintiff’s repeated discovery failures, we find no abuse of discretion by Judge Howard in reaching the decision that the dismissal of plaintiff’s case best served the interests of justice.
 
 Traxler, supra; Dean, supra,
 
 182
 
 *36
 
 Mich App 33. See also
 
 Mink v Masters,
 
 204 Mich App 242, 245; 514 NW2d 235 (1994).
 
 [10]
 

 Affirmed.
 

 [1]
 

 With respect to the second statutory venue requirement concerning a party’s residence, plaintiff’s complaint alleged that at the time she received defendants’ allegedly negligent legal assistance she resided in Wayne County. Therefore, venue is proper in Wayne County pursuant to MCL 600.1629(1)(b)(i); MSA 27A.1629(1)(b)(i).
 

 [2]
 

 For some exceptions, see MCR 7.208(B)-(H).
 

 [3]
 

 For the sake of completeness, we note that after venue was transferred to the Oakland Circuit Court and after this Court granted plaintiff leave to appeal the transfer, plaintiff expressed her desire that the parties continue discovery. The record contained an April 30, 1997, letter plaintiff’s counsel wrote defendants noting that this Court had granted plaintiff leave to appeal, and indicating that ‘‘[b]ased upon the Michigan Court Rules, our appellate decisions and common sense, it is my belief that discovery shall continue pending appellate determination of the sole issue of venue . . . .” “[T]o allay any concerns that [Oakland Circuit Judge Barry L.] Howard may have as to the trial courts [sic] continued jurisdiction,” plaintiff’s counsel prepared a proposed “Stipulation to Proceed with Discovery During Pendency of Interlocutory Appeal,” and a proposed order that discovery continue in the usual manner and that Judge Howard continue supervising this discovery. Defendants apparently never signed the stipulation, and no order concerning discovery was ever entered.
 

 [4]
 

 On May 28, 1997, Woll, Crowley, Berman, Olsman & Nolan, EC., concurred in this motion.
 

 [5]
 

 On December 26, 1997, Woll, Crowley, Berman, Olsman & Nolan, P.C., again concurred in the motion for dismissal.
 

 [6]
 

 Combs’ November 1996 interrogatories thirteen and fourteen read as follows:
 

 13. Does plaintiff intend to call any expert witnesses at the time of trial in this matter?
 

 14. If the answer to the preceding interrogatory is affirmative, please state:
 

 a. The name, address, and telephone number of each such intended expert;
 

 b. Age;
 

 c. Educational background;
 

 d. Date of retention by Plaintiffs [sic];
 

 e. The subject matter about which each such expert is expected to testify;
 

 f. The substance of the facts and opinions to which the expert is expected to testify;
 

 g. A summary of the grounds for each opinion of that expert.
 

 
 *31
 

 Question [E.]:
 
 The subject matter about what each such expert is expected to testify.
 

 Answer [E.]:
 
 Professional negligence and the merits of the underlying case.
 

 [Question]
 
 F. The substance of the facts and opinions to which the expert is expected to testify.
 

 [Answer
 
 F] The source of facts is the records and documents and transcript, including without limitation, the Opinion from the United States District Court and the Opinion of the Sixth District [sic] Court of Appeals. The Opinions are as follows:
 

 [7]
 

 See
 
 Krim v Osborne,
 
 20 Mich App 237, 241; 173 NW2d 737 (1969) (To be “wilful” the failure need not be accompanied by wrongful intent; it is sufficient if it is conscious or intentional, not accidental or involuntary.); Black’s Law Dictionary (6th ed), defining “willfully” in the context of civil actions as “an act which is intentional, or knowing, or voluntary, as distinguished from accidental,” and defining “wanton” as “[rjeckless, heedless, . . . characterized by extreme recklessness or foolhardiness.” The terms “wilful” and “wanton” aptly characterize plaintiff’s repeated failures to obey the trial court’s discovery orders.
 

 [8]
 

 The trial had been adjourned from December 5, 1997, until May 1998.
 

 [9]
 

 See MCR 2.309(B), which generally requires that a party timely respond to interrogatories.
 

 [10]
 

 In addressing the defendants’ challenge to the trial court’s entry of a default judgment against them based on defendants’ failure to comply with discovery requests, the
 
 Mink
 
 Court, at 245, concluded as follows:
 

 Under the facts of this case, we are not persuaded that the trial court abused its discretion in granting a default judgment as a sanction for failure to comply with discovery. Defendants were afforded a number of opportunities to comply with the discovery request and failed to do so and had even been warned that a failure to comply with the discovery request would result in a default judgment, yet they still chose not to comply with the discovery request. Under these facts, it was within the trial court’s discretion to grant a default judgment for defendants’ blatant refusal to comply with the discovery request and the court orders compelling compliance.