# STATE OF MICHIGAN

# COURT OF APPEALS

IMPERIAL INVESTMENTS, L.P.,

UNPUBLISHED
July 21, 2016

Plaintiff-Appellant,

v

No. 327641
Michigan Tax Tribunal

SHELBY TOWNSHIP,

LC No. 14-003803-R

Defendant-Appellee.

Before: STEPHENS, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

When filing eight tax appeals against Shelby Township, counsel for petitioner, Imperial Investments, failed to remit sufficient filing fees to the Michigan Tax Tribunal (MTT). Counsel allegedly did not receive the MTT's subsequent emails transmitting the docket numbers assigned to the tax appeals and advising petitioner of its default based on the filing fee shortfall. When petitioner failed to act on these messages, the MTT dismissed its petitions. Petitioner immediately remedied the financial issue and in seven of the eight tax appeals, served updated petitions including the docket numbers. Despite that petitioner filed a motion to set aside the default of the petition underlying this appeal, it accidentally failed to serve a single updated petition. This error was not deliberate and caused no delay or prejudice, yet the MTT dismissed the petition once and for all. This was an abuse of the MTT's discretion. We therefore reverse and remand to the MTT for continued proceedings.

## I. BACKGROUND

On May 30, 2014, attorney Joseph Ciaramitaro filed several petitions before the entire tax tribunal on behalf of his client, Imperial Investments, L.P., challenging the property tax assessments of various properties by Shelby Charter Township. He served the petition underlying this matter on the township, which promptly responded and affirmed the accuracy of its assessment of petitioners' properties.

Ciaramitaro apparently remitted inadequate filing fees with the various petitions he filed on May 30. Accordingly, on July 3, 2014, the MTT sent an order of default to Ciaramitaro via email. The order advised petitioner to cure the default within 21 days by submitting the appropriate filing fee. Absent such cure, the order warned, the petition would be deemed untimely and dismissed. Moreover, petitioner would be required to file a motion establishing good cause to set aside the default. That same day, the MTT electronically submitted to

-1-

Ciaramitaro a "notice of docket number," labeling the current matter 14-003803. The notice directed petitioner to serve the township with a new petition bearing the assigned docket number within 45 days, and then file a proof of service.

Ciaramitaro asserts that he did not receive the MTT's July email regarding the default or the notice of docket number. He did receive, however, the order of dismissal that was served by the same method on October 30, 2014. The dismissal was entered, according to the order, because petitioner "had sufficient notice of its default and . . . ample opportunity to cure the default" but failed to do so. Ciaramitaro contacted the MTT and requested copies of the default and notice of docket number. The MTT provided the docket number notices for all eight petitions filed on May 30. Ciaramitaro's office then served the township with amended petitions in several matters including the assigned docket numbers and filed proofs of service. His office failed, however, to serve the petition and file a proof of service in the subject docket number—14-003803.

On November 14, 2014, petitioner filed a motion to set aside the default. Ciaramitaro alleged that he paid insufficient filing fees "due to a clerical error" and remitted the shortfall on petitioner's behalf. Ciaramitaro further indicated that he had not received the July 3 default notice. In an accompanying brief, Ciaramitaro averred that he and his secretarial staff had reviewed the firm's email accounts and found no message from the MTT on July 3. The brief continued, "[T]he oversight by this counsel in not responding to the Default was not out of negligence or disrespect . . . but rather as a result of not knowing that a Default was entered." Therefore, "it would be . . . unjust and inequitable to petitioner to dismiss the case.

In response to petitioner's motion, on November 17, 2014, the MTT forwarded a form document describing various duties of MTT petitioners. The document provided in relevant part:

> The [MTT] continues to have issues with e-mail addresses of parties. As a reminder, if the [MTT] has a record of a party's e-mail address, the [MTT] *will electronically serve all correspondence.* Parties cannot opt out of electronic service. . . . Further, the [MTT] continues to have problems with spam filters and full email accounts on email addresses, particularly addresses used by assessors. The [MTT] believes that it is the responsibility of each party, including assessors, to set an appropriate spam filter and clean out their email accounts on a regular basis to receive orders and decisions rendered by the [MTT]. The [MTT] will *not* resend notices, orders, decisions, etc. where such correspondence from the [MTT] is rejected as spam or is returned because an e-mail account is full. [Emphasis in original.]

On December 1, 2014, the MTT agreed to reinstate the case but held petitioner's motion to set aside the default in abeyance pending its actual cure of the default. The MTT determined that it erred in the ground cited for dismissing the petition in the first instance. The MTT clarified, "the case should have been dismissed because Petitioner failed to file a Proof of Service indicating that the Petition with noted Docket No. [14-003803] had been timely served and not because Petitioner had failed to timely cure its default, as Petitioner had not yet established a history of deliberate delay." Specifically, petitioner was required to amend its

-2-

petition to include the docket number, serve the township, and file a proof of service with the MTT within 45 days of July 3, 2014.

The MTT put little credence in Ciaramitaro's claim that he did not receive the July 3 notices of default and docket number. The MTT served the notices through the email address provided by Ciaramitaro and the message was "not returned as undeliverable." The order of dismissal was sent to the same address with no difficulty, the order further noted. Although petitioner had cured the default to the extent it paid the remainder of the filing fee, the MTT found that petitioner still had not provided a proper notice of service and therefore "the Petition is still not properly pending." In making this ruling, the MTT made no mention of the November 4, 2014 proofs of service filed by Ciaramitaro in the companion matters or the lack of a proof of service in this docket number. The MTT redesignated the matter as 14-003803-R and ordered "that all documents filed prior to the entry of this order" would be placed in the file for the updated docket number. The order thereby indicated that had a November 4 proof of service been filed, it would thereafter be placed in the record for docket number 14-003803-R. The MTT concluded its order:

> IT IS FURTHER ORDERED that Petitioner shall serve the Petition with noted Docket Number as required by TTR 221(4) and 221(5), and file proof demonstrating said service, as required by TTR 221(9), within 14 days of the entry of this Order. Failure to comply with this Order will result in the dismissal of the case, as provided by TTR 231 and 221(4).

In its appellate brief, petitioner claims that Ciaramitaro gave the December 1 order to his secretary "with instructions to serve the Petition and Docket Number upon Respondent." Petitioner recites that "[u]nbeknownst to Petitioner's counsel," the secretary neither served the new petition nor filed a proof of service. Rather, Ciaramitaro claimed that his secretary suffered an emotional breakdown and serving the petition and filing the new proof of service in this docket number fell through the cracks. Petitioner and the township entered negotiations regarding the subject property's assessed value. And on March 5, 2015, petitioner filed a stipulated motion to amend the petition by correcting the petitioner's name to its sister corporation, ODK Investments, L.L.C.

The MTT denied the stipulated motion noting that the petition was not actually pending because petitioner never took the steps necessary to have the default set aside. Specifically, petitioner did not file a proof of service with the correct docket number after December 1. The MTT had warned petitioner in its previous order that failure to comply with this requirement would result in dismissal. The MTT recited seven factors outlined in *Grimm v Dep't of Treasury*, 291 Mich App 140, 149; 810 NW2d 65 (2010), that the tribunal "should consider before imposing the sanction of dismissal." These factors are:

> "(1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice."

[*Grimm*, 291 Mich App at 149, quoting *Vicencio v Jaime Ramirez, MD, PC*, 211 Mich App 501, 507; 536 NW2d 280 (1995).]

Based on its consideration, the MTT determined that dismissal was appropriate. Specifically, "Petitioner has made no attempt to cure its default and Petitioner's failure to timely cure its initial default, and subsequent default following reinstatement, has established a history of deliberate delay."

Petitioner filed a motion for reconsideration. It shifted the blame for the October 30 default and lack of receipt of the docket number notice onto the MTT, claiming that an MTT secretary informed Ciaramitaro's secretary "that there had been some problems with notices being received via email by parties." Ciaramitaro insisted that he and his secretaries "checked all back e-mails" for the week in question and that no messages relevant to the current matter were received from the MTT. Following the telephonic communication with the MTT, Ciaramitaro received copies of the docket number notices for this matter and several others. Ciaramitaro contended that on November 4, he "instructed his secretary to send out the Notice of Docket Number and Petition on" these various tax appeals and file proofs of service. The secretary did so in the several other matters, but failed to do so in this case. It was a mere "oversight" that the notice of docket number and petition were not filed in the current matter. But, petitioner contended, the township was on notice of the correct docket number as it was included in petitioner's motion to set aside the default. Following the MTT's December 1 order, counsel again requested his secretary to serve the petition and file proof of service. The secretary "assumed" that her November 4 actions complied with the order and failed to realize that she had not re-served the petition in this matter. Shortly thereafter, counsel's secretary "was hospitalized for an emotional breakdown and did not return to work until the second week of January." The failure to follow the MTT's order was "a mistake by Counsel's office" and was not intentional, petitioner pleaded.

Petitioner continued that dismissal was too drastic a sanction to impose in this case. It took issue with the MTT's conclusion that its failure to remedy the July 3 default was willful. Petitioner noted that it immediately remedied the default upon receiving the order of dismissal as this was counsel's first actual notice of the error. Petitioner asserted that it timely filed a motion to reinstate the case and set aside the default and paid all necessary filing fees. It also filed an accurate proof of service in connection with these motions. Moreover, "Respondent had previous to said date been served with a copy of the Petition which has not changed and has now been served with the Petition and the current Docket Number. . . ." Therefore, petitioner insisted, it was "inaccurate" to state that "Petitioner made no attempt to cure its initial default."

Petitioner challenged the MTT's conclusion that its failure to cure the default after the December 1 order was willful. Ciaramitaro instructed his secretary to comply with the MTT's order and the failure to do so "was an oversight." Ciaramitaro acknowledged that he was responsible for the omissions of his staff, but emphasized that his negligence did not amount to a willful violation of the MTT's order. The township had been served and "had discussed meetings and settlement discussions on several occasions and Petitioner had exchanged comparable values of similar properties with Respondent's Counsel." This evidenced that the error had not caused substantive delay or prejudice. Petitioner further argued that the MTT had

not engaged in "careful consideration" of each *Grimm* factor as required by *Bass v Combs*, 238 Mich App 16, 26-27; 604 NW2d 727 (1999),[1] instead baldly stating its conclusion.

The MTT subsequently denied petitioner's request, noting that its practice of utilizing email alone for service "was . . . widely publicized" and that petitioner and Ciaramitaro should have been on notice. The MTT received no return message that its emails were undeliverable and Ciaramitaro received the October 30 dismissal with no difficulty, suggesting that the July 3 default and docket number notices had been delivered. In this regard, the MTT described that it "tracks email returns and places copies of all returns as undeliverable in the respective case file with notes indicating the steps taken to ensure proper service of the returned notice, order, or decision. . . ." Accordingly, the MTT determined, "it appears that the failure to receive the Notice of Docket Number and Default Order was the result of a failure on the part of Petitioner's attorney to properly manage his email account to ensure that [MTT] emails were not directed to his spam folder and deleted."

Additionally, the MTT emphasized that petitioner did receive the December 1 order providing specific instructions to cure the default and reinstate the case and yet petitioner failed to adequately comply. There was no record support for Ciaramitaro's assertion that his secretary believed she had filed the corrected proof of service on November 4. And the petition earlier served on the township did not include the docket number assigned on December 1, rendering service ineffective. "Additionally," the MTT stated, "there would have been no need for the [MTT] to issue an Order extending the time for Petitioner to cure its default if the November 4, 2014 service had cured the default." "Petitioner's actions were not the result of an oversight, but rather deliberate in nature."

The MTT also found questionable the applicability of the *Grimm* factors, which it had previously applied to the matter. Specifically, the petition was dismissed as a matter of procedure pursuant to an MTT rule, and not truly as a sanction.

Petitioner now appeals the MTT's ruling. The township neither supports nor objects to petitioner's appellate plea, leaving this Court to its "discretion to determine whether the [MTT] abused its discretion" in dismissing the subject petition.

## II. ANALYSIS

We review for an abuse of discretion the MTT's dismissal of a party's petition "for failure to comply with its rules or orders." *Grimm*, 291 Mich App at 149. The tribunal acts within its discretion when its decision falls within the range of "reasonable and principled outcome[s]." *Id.*, citing *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

---

[1] *Bass* was overruled on venue grounds in *Dimmit & Owens Financial, Inc v Deloitte & Touche (ISC), LLC*, 481 Mich 618, 628; 752 NW2d 37 (2008).

Petitioner's fumbling began with the initiation of its petition. Mich Admin Code, R 792.10219(1) provides that a "contested case" is not "commenced" until the petitioner "mail[s] or deliver[s] a petition to the [MTT] with the appropriate filing fee within the time periods prescribed by statute." Petitioner failed to include the appropriate filing fee with its petition. As a result, the MTT entered a default.

The next link in the chain of errors was added when petitioner failed to follow through after the MTT assigned a docket number for the matter. Mich Admin Code, R 792.10221(2)(c) demands that "[a]ll pleadings and motions filed with the [MTT] shall contain . . . [t]he docket number of the appeal after it is assigned by the [MTT]." Once the docket number is assigned Rule 792.10221(4) provides for reservice of the petition including the docket number:

> The petition shall note the docket number assigned by the [MTT] and be served as provided for in this rule *within 45 days of the issuance of the notice of docket number*, unless otherwise provided by the [MTT]. *Failure to serve* the petition with noted docket number within 45 days of the issuance of the notice of docket number *shall result in the dismissal* of the contested case, unless otherwise provided by the [MTT]. [Emphasis added.]

The MTT served the notice of docket number on July 3, 2014, and petitioner failed to serve an updated petition including the docket number within 45 days. As such petitioner also failed to file a proof of service incorporating the docket number as required by Rule 792.10221(9). This failure was also grounds for dismissal. *Id.*

The MTT initially dismissed petitioner's tax appeal based on petitioner's failure to cure the default caused by the filing fee shortfall. Mich Admin Code, R 792.10231 governs defaults and dismissals of MTT petitions. The rule provides, in relevant part:

> (1) If a party has failed to plead, appear, or otherwise proceed as provided by these rules or the [MTT], the [MTT] may, upon motion or its own initiative, hold that party in default. A party held in default shall cure the default as provided by the order holding the party in default and, if required, file a motion to set aside the default accompanied by the appropriate fee within 14 days of the entry of the order holding the party in default or as otherwise provided by the [MTT]. Failure to comply with an order of default may result in the dismissal of the contested case or the conducting of a default hearing as provided in this rule.

> * * *

> (4) Failure of a party to properly prosecute the contested case, comply with these rules, or comply with an order of the [MTT] is cause for dismissal of the contested case or the conducting of a default hearing for respondent. Upon motion made within 21 days of the entry of the order, an order of dismissal may be set aside by the [MTT] for reasons it considers sufficient. . . .

The October 30 dismissal was properly entered pursuant to this rule because petitioner failed to cure the default, regardless of the reason.

Petitioner sought to have the October 30 dismissal set aside based on the lack of actual notice of the default. In connection with the motion, petitioner also cured the filing-fee deficit. The MTT acknowledged this cure but cited as an additional ground for dismissal petitioner's failure to serve a petition bearing the assigned docket number within 45 days as required by Mich Admin Code, R 792.10221(4). The MTT gave petitioner until December 15 to cure this defect and petitioner concedes that this did not occur.

The MTT apparently noticed petitioner's failure when petitioner filed its March 2015 motion to amend the petition. The MTT dismissed the petition yet again. Petitioner then sought reconsideration of this decision. Mich Admin Code, R 792.10257(1) controls motions for rehearing or reconsideration before the MTT.

> The [MTT] may order a rehearing or reconsideration of any decision or order upon its own initiative or the motion of any party filed within 21 days of the entry of the decision or order sought to be reheard or reconsidered.

It is the denial of this motion that we must review.

Contrary to the MTT's musings in its order denying reconsideration, the seven factors described in *Grimm* for the MTT to consider before dismissing a petition are applicable in this case. In *Grimm*, the MTT entered a default against the petitioner because it failed to "identify the assessment numbers being appealed" in the original petition. The MTT dismissed the petition, in part, because the petitioner failed to cure this defect within 21 days." *Grimm*, 291 Mich App at 148-149. The circumstances in *Grimm* are not so dissimilar to those present here that the matters could be distinguished and *Grimm* found inapplicable.[2] As in *Grimm*, the petition in this case was deficient and the MTT permitted a set amount of time for petitioner to render a cure. When the cure was not forthcoming, the MTT dismissed the matter. This is the very scenario to which *Grimm* applies.

The seven factors quoted earlier as outlined in *Grimm* were adopted from *Vicencio*, 211 Mich App at 507.[3] In *Vicencio*, this Court described the factors a circuit court "should consider

---

[2] In an unpublished opinion, this Court found application of the *Grimm* factors improper when a tax appeal was dismissed for lack of jurisdiction. *Fisher v City of Ann Arbor*, unpublished opinion of the Court of Appeals, issued February 4, 2014 (Docket Nos. 310921, 313363), unpub op at 5. Jurisdiction was not at issue in this case, however.

[3] Again, when faced with the decision whether to dismiss a petitioner's case, the MTT should consider the following factors:

> "(1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice." [*Grimm*, 291 Mich App at 149, quoting *Vicencio*, 211 Mich App at 507.]

-7-

before imposing the sanction of dismissal" in a civil case. *Grimm*, 291 Mich App at 149. This Court found consideration of the same factors appropriate for the MTT "before imposing the drastic sanction of dismissal." *Id.* at 149-150. "When considering the sanction of dismissal, the record should reflect that the [MTT] 'gave careful consideration to the factors involved and considered all its options in determining what sanction was just and proper in the context of the case before it.'" *Id.* at 150, quoting *Bass*, 238 Mich App at 26.

In *Grimm*, this Court held that the MTT abused in discretion in dismissing the petition. Although the petitioner did not comply with the MTT's order to provide the assessment numbers within 21 days, "nothing in the record indicate[d] that petitioner's failure . . . was willful or that petitioner had a history of deliberately delaying the proceedings or refusing to abide by [MTT] orders." *Grimm*, 291 Mich App at 150. Given the information that was provided in the petition and that petitioner's tax assessment records were in the respondent's control, this Court found no prejudice as a result of the petitioner's actions. *Id.* Ultimately, "the degree of noncompliance and lack of resulting prejudice" weighed against dismissal, this Court concluded. *Id.*

In *Professional Plaza, LLC v City of Detroit*, 250 Mich App 473, 474; 647 NW2d 529 (2002), the MTT dismissed a petition after finding "that petitioner's valuation disclosure did not meet the criteria of the applicable administrative rule." The MTT allowed the petitioner 21 days to cure the deficiency but failed to inform the petitioner "why the disclosure was deficient." *Id.* The petitioner did not comply and the MTT dismissed. *Id.* This Court determined that the MTT abused its discretion because (1) it "never specifically informed petitioner how its disclosure failed to comply with the rule, or what petitioner had to do to bring the disclosure into compliance," *id.* at 475, and (2) the valuation disclosure actually presented by the petitioner included "relevant evidence of the fair market value" of the subject property, meeting the requirements of the applicable rules. *Id.* at 476. Accordingly, this Court found that the MTT acted outside the scope of reasonable and principled outcomes in dismissing the case. *Id.*

We acknowledge that petitioner's actions go beyond those described in *Grimm* and *Professional Plaza*. Even so, the record does not support outright dismissal of the current petition. Contrary to the MTT's assessment, we discern no record evidence that petitioner's violations were willful, rather than accidental, as contemplated under the first *Grimm* factor. While the MTT might have lost patience with petitioner's string of accidents, this does not change the character of petitioner's intent. Assuming that the MTT properly sent its initial email message, the evidence establishes that Ciaramitaro and his staff failed to adequately inspect the office's email system to ensure the possibility of delivery of MTT messages. Negligence, rather than intentional conduct, also led to the failure to re-serve the petition in this matter following the October 30 and December 1 MTT orders.

As petitioner's conduct was unintentional, the MTT also could not conclude that petitioner had a "history of refusing to comply with previous court orders." Refusal suggests an element of intent. See *Merriam-Webster's Collegiate Dictionary* (11th ed), p 1047 (defining "refuse" as "to show or express unwillingness to do or comply with"). Given the accidental nature of petitioner's repeated failure to properly serve the petition and file proof of service, the second consideration of *Grimm* has not been met.

The MTT failed to consider whether petitioner's errors caused any prejudice to the township. However, it is clear on this record that no prejudice existed. The township was fully aware of the allegations in the subject petition and had already entered negotiations to settle the question of the property's taxable value, just as it had in the seven other tax appeals. Ignorance of the most up-to-date docket number did not prevent informed negotiation.

There also appears no delay in this matter, deliberate or otherwise. Although it took nearly a year for the petition underlying this appeal to be properly served and filed, the parties proceeded with their negotiations just as they did in the other tax appeals then pending before the MTT. Petitioner's failure would not cause the matter to linger unnecessarily on the MTT's docket.

In relation to factor (5), "the degree of compliance with other parts of the court's orders," we find it telling that petitioner complied with the various orders issued contemporaneously in the various other tax appeals. Petitioner cured the filing-fee deficit. It served new petitions bearing docket numbers on the township and filed proofs of service in the other tax appeals that were originated at the same time as this matter. Even in this case, petitioner filed a motion to set aside the default; it just missed this docket number when preparing new petitions and proofs of service.

Factor (6) gages a petitioner's "attempts to cure the defect." Again, petitioner's actions in relation to its contemporaneous tax appeals reveal that petitioner made all necessary efforts to revive its petitions, but that this matter simply fell through the cracks.

Finally, the MTT completely failed to consider factor (7), "whether a lesser sanction would better serve the interests of justice." Petitioner's repeated negligence in relation to the current petition likely warrants some sanction. After all, it forced the MTT to issue a default and dismissal and analyze a motion to reinstate the matter, only to have petitioner again drop the ball. A monetary fee to cover labor cost may be appropriate. Such a sanction would also ensure the petitioner and its counsel exercise greater care in the future. Given the lack of deliberate action, prejudice, or delay, however, dismissing the petition went too far.

Accordingly, we reverse the MTT's order of dismissal and remand for continued proceedings. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher