DIMMITT & OWENS FINANCIAL, INC
v DELOITTE & TOUCHE (ISC), LLC

Docket No. 262381. Submitted November 16, 2006, at Detroit. Decided
March 1, 2007, at 9:00 a.m. Leave to appeal sought.

Dimmitt & Owens Financial, Inc., and JMM Noteholder Repre-
sentative, L.L.C., brought an accounting malpractice action in
the Wayne Circuit Court against Deloitte & Touche (ISC),
L.L.C., and others. The defendants, who have an office in Wayne
County, moved to change venue to Oakland County, where
Dimmitt & Owens has its corporate headquarters, on the
ground that the defendants' employees had performed the
allegedly negligent accounting work there. The trial court,
Daphne Means Curtis, J., denied the motion, reasoning that
although the defendants had collected documents at Dimmitt &
Owens's headquarters in Oakland County, the analysis and
reports at issue were generated in the defendants' Wayne
County office. The defendants appealed.

The Court of Appeals *held*:

Under the statute governing venue, the plaintiffs suffered the
"original injury" when they relied on the defendants' allegedly
faulty information in making investment decisions at their office
in Oakland County. The defendants' alleged negligence in collect-
ing and analyzing data presented only the potential for future
injury.

Reversed and remanded for further proceedings.

VENUE — ACCOUNTING MALPRACTICE — ORIGINAL INJURY.

Under the statute that governs venue in tort actions, the "original
injury" in an accounting malpractice claim occurs where a plaintiff
relies on the allegedly faulty information (MCL 600.1629[a]).

*Stark Reagan, P.C.* (by *Gregory S. Pierce, Peter L.
Arvant,* and *Jennifer L. Gasiecki*), for Dimmitt &
Owens Financial, Inc.

*Beals Hubbard, P.L.C.* (by *John A. Hubbard*), for JMM Noteholder Representative, L.L.C.

*John P. Jacobs, P.C.* (by *John P. Jacobs*), and *Sidley Austin Brown & Wood LLP* (by *William F. Lloyd, Jeffrey C. Sharer,* and *Kristen R. Seeger*) for Deloitte & Touche (ISC), L.L.C., and Philip Jennings.

Before: WILDER, P.J., and KELLY and BORRELLO, JJ.

PER CURIAM. In this accounting malpractice action, defendants Deloitte & Touche (ISC), L.L.C., Deloitte Services Limited Partnership, also known as Deloitte & Touche, L.L.P., and Philip Jennings appeal by leave granted the trial court's order denying their motion to change venue from Wayne County to Oakland County. We reverse and remand.

I. FACTS

On November 2, 2004, plaintiffs Dimmitt & Owens Financial, Inc., and JMM Noteholder Representative, L.L.C., filed a complaint alleging the following facts. Plaintiffs asserted that Dimmitt is a "traditional factor" that purchases accounts receivable from its customers, and JMM represents the interests of Dimmitt's investors. Dimmitt received financial backing through unsecured promissory notes from multiple investors. Toward the end of 2002, investor notes had grown to approximately $16 million. These investor notes were subordinated in interest to Dimmitt's obligation to Standard Federal Bank, which provided Dimmitt with a line of credit to fund its factoring operations. Because Standard Federal Bank required Dimmitt to provide interim-review and year-end financial statements, Dimmitt retained defendants to conduct its financial audits and generate reports. Copies of Dimmitt's interim-

review and year-end financial statements, as prepared by defendants, were distributed to Dimmitt's investors and Standard Federal Bank.

Plaintiffs further alleged that by 2003, Dimmitt was in default on financial covenants maintained with Standard Federal Bank and could not meet its financial obligations to investors. Dimmitt notified Standard Federal Bank of its impending default and presented a proposal for reorganization to its investors. Standard Federal Bank and Dimmitt's investors accepted the reorganization plan, and Dimmitt also entered into a forbearance agreement with Standard Federal Bank. Shortly thereafter, Dimmitt determined that it lacked the financial capacity to comply with either the forbearance agreement or the reorganization plan and elected to liquidate its assets.

Plaintiffs alleged that an integral component in the development of Dimmitt's proposal for reorganization and negotiations with Standard Federal Bank was ascertainment of the true value of its assets. It was subsequently discovered that a significant portion of Dimmitt's assets had been vastly overstated in the financial statements defendants had audited and reviewed. Further, accounting errors and omissions were discovered that included accounts receivable that had been converted to "purchase discounts," which essentially comprise debts rather than assets. Plaintiffs further alleged that defendants failed to accurately determine the collectibility of its accounts receivable, having designated them as assets when, in reality, they were uncollectible when the audits were conducted.

Plaintiffs filed a complaint in the Wayne Circuit Court alleging accounting malpractice with counts of negligence, fraud/intentional misrepresentation, constructive fraud, breach of contract, breach of fiduciary

duty, and also sought declaratory judgment. In lieu of an answer to plaintiffs' complaint, defendants filed a motion for change of venue. Defendants asserted that the accounting work relevant to plaintiffs' complaint was performed at Dimmitt's offices in Oakland County. In support of this assertion, they offered Jennings's affidavit. Defendants argued that MCL 600.1629(1)(a) required a transfer of venue to Oakland County from Wayne County because Oakland County was "the county in which the original injury occurred."

Plaintiffs responded that venue was proper in Wayne County. Plaintiffs asserted that the issuance of annual engagement letters, meetings and determinations pertaining to audit staffing, issuance of letters seeking documents and spreadsheets in preparation for conducting an audit, document review and analysis, compilation of a draft report, and issuance of the final financial statements all occurred at Deloitte's headquarters in Detroit, which is in Wayne County. In support of their assertions, plaintiffs attached the affidavit of Dimmitt's office manager and vice president, Paula Crady. Crady asserted that the documents compiled for review by Deloitte's junior auditing staff were provided to them at Dimmitt's Oakland County office, but removed by Deloitte's staff for further review and analysis and, ultimately, compilation of a report in Deloitte's Wayne County office.

Defendants filed an amended motion for change of venue, asserting that "virtually all, if not all, examination and substantive testing of Dimmitt's financial statements was [sic] performed by Deloitte personnel on site at Dimmitt's corporate headquarters in Troy, Michigan," and that almost all of its substantive evaluations and determinations occurred at Dimmitt's location. Defendants also contended that all meetings in-

volving Dimmitt's staff and relevant information were conducted at Dimmitt's headquarters and that the only work performed at Deloitte's offices in Detroit constituted inconsequential paperwork, word processing, and printing of reports.

The trial court conducted a hearing on defendants' motion. The trial court asked where defendants' opinion "regarding accounts receivable" was generated. Defendants asserted that its determinations regarding Dimmitt's financial viability occurred during their review of documentation at Dimmitt's headquarters in Oakland County. The trial court noted that "it's only when the opinion is rendered that alleged malpractice can occur." Specifically, the trial court opined that "the review is not the issue necessarily, but it is the opinion given by Deloitte that Dimmitt relies on and the stockholders rely on that would be the essence or the cause of the injury or the alleged malpractice." Plaintiffs' counsel noted that the documents drafted on Deloitte's letterhead had to be generated in Wayne County, and argued:

> Now, collecting documents or collecting information is one thing, but one thing that I truly think was important was . . . the advance letter. . . . They're making strategies on how to do this audit before they step foot into Oakland County. Now we allege that those instances and those decisions also comprise instances of malpractice. So it's not just the three weeks that they're there and they're committing all this malpractice in the three-week window that they're there, no[,] primarily they're getting documents. What they're doing and how they're analyzing and reviewing them, that's in Wayne County.

Acknowledging that defendants engaged in relevant activities in both Wayne County and Oakland County, the trial court denied defendants' motion for change of venue, stating:

> The auditor's reports, the financial reports, the . . . interim review, those were apparently done, from what I can determine, in the Detroit office. Those were decisions being made with respect to the financial viability, if you will, of Dimmitt, which is located in Oakland County, by Deloitte, which is located in the City of Detroit, they made those decisions, at least many of the materials [sic] ones, it appears, in the city of Detroit, which is in the County of Wayne. And certainly with respect to staffing decisions, what personnel Deloitte and Touche were going to send to review whatever documents may have been pertinent to its review or its audit, those decisions were made in the Detroit offices. They certainly wouldn't have been made at the offices of Dimmitt in Oakland County.

The trial court entered an order to this effect. Defendants appeal this ruling.

## II. ANALYSIS

Defendants contend that the trial court erred in denying their motion to change venue to Oakland County. We agree.

We review for clear error the trial court's ruling on a motion to change venue. *Massey v Mandell,* 462 Mich 375, 379; 614 NW2d 70 (2000). A decision is clearly erroneous if the reviewing court is left with the "definite and firm conviction that a mistake has been made." *Id.* "Statutory interpretation is an issue of law that is reviewed de novo." *Shinholster v Annapolis Hosp,* 471 Mich 540, 548; 685 NW2d 275 (2004). The primary goal of statutory construction "is to discern and give effect to the intent of the Legislature." *Id.* at 548-549. "This Court looks first to the specific language of the statute, because the Legislature is presumed to have intended the meaning it has plainly expressed." *Dana v American Youth Foundation,* 257 Mich App 208, 212; 668 NW2d 174 (2003). "If the expressed language is clear, judicial

construction is neither required nor permitted, and the statute must be enforced as written." *Id.*

Venue in tort actions is governed by MCL 600.1629(1), which provides, in relevant part:

(a) The county in which the original injury occurred and in which either of the following applies is a county in which to file and try the action:

(*i*) The defendant resides, has a place of business, or conducts business in that county.

(*ii*) The corporate registered office of a defendant is located in that county.

The parties do not dispute that both Wayne County and Oakland County meet the necessary criteria for MCL 600.1629(1)(a)(*i*). The parties disagree on where the "original injury" occurred for purposes of MCL 600.1629(1)(a). Defendants assert that "the injury of which [plaintiffs] complain is the allegedly negligent manner in which [Deloitte] and Mr. Jennings performed audit services for Dimmitt," which occurred at Dimmitt's place of business in Oakland County. Plaintiffs contend that it was not until defendants compiled and sent the erroneous reports to plaintiffs from Deloitte's Detroit office that the original injury occurred and, therefore, the original injury occurred in Wayne County.

Thus, the issue presented turns on what constituted the original injury in this case. Because MCL 600.1629 does not define the term "original injury," this Court has construed its meaning. In *Karpinski v St John Hosp-Macomb Ctr Corp,* 238 Mich App 539; 606 NW2d 45 (1999), a wrongful death, medical malpractice action, the issue was whether the original injury occurred in the county where the decedent suffered a ruptured abdominal aortic aneurysm or the county where he died as a result. In construing the undefined term "original

injury," this Court determined that "injury" is ordinarily defined as " '[a]ny wrong or damage done to another, either in his person, rights, reputation, or property.' " *Id.* at 543, quoting Black's Law Dictionary (6th ed). This Court then emphasized that the term "original" modifies the word "injury," and is defined as "belonging or pertaining to the origin or beginning of something." *Karpinski, supra* at 544, quoting *Random House Webster's College Dictionary* (1997). It further noted that our courts had previously distinguished between the injury as an element of the cause of action and damages emanating from that injury. *Id.* at 545, citing *Lorencz v Ford Motor Co,* 439 Mich 370, 376; 483 NW2d 844 (1992), and *Barnes v Int'l Business Machines Corp,* 212 Mich App 223, 226; 537 NW2d 265 (1995). Accordingly, it held that there is only one "original injury," which is distinguishable from the damages that emanate from that injury. *Karpinski, supra* at 546-548.

Also instructive is our Supreme Court's determination that, in tort actions, an injury must be an injury actually suffered, not simply a potential for an injury to be suffered. In *Henry v Dow Chemical Co,* 473 Mich 63, 72-73; 701 NW2d 684 (2005), a "toxic tort" case, our Supreme Court held:

> If plaintiffs' claim is for injuries they may suffer in the future, their claim is precluded as a matter of law, because Michigan law requires more than a merely speculative injury. . . . It is a *present* injury, not fear of an injury in the future, that gives rise to a cause of action under negligence theory.

Thus, according to *Karpinski* and *Henry,* an "original injury," for the purposes of MCL 600.1629(1)(a), must be the first injury that the plaintiff actually suffered, not simply a point at which a potential arose for the

plaintiff to suffer an injury. Both parties erroneously focus on where the negligence in this case occurred. But the clear language of the statute indicates that "the Legislature intended to make the place where the injury transpires paramount for venue purposes," *Karpinski, supra* at 546, not the place where the negligence giving rise to the injury transpires.

Defendants rely on *Bass v Combs,* 238 Mich App 16; 604 NW2d 727 (1999), a legal malpractice case, which, defendants assert, stands for the proposition that the original injury is always where the alleged negligent acts or omissions occurred. In *Bass,* the defendant attorneys filed the plaintiff's wrongful discharge claim in Wayne County and the case was removed to the United States District Court, Eastern District of Michigan, Southern Division (also in Wayne County). *Id.* at 18-19. The defendants, however, failed to comply with the court's discovery orders, failed to appear at a deposition, failed to object to a recommendation for dismissal, and failed to properly serve some defendants. *Id.* at 19. The plaintiff ultimately filed a legal malpractice claim in Wayne County against her attorneys, who filed a successful motion to change venue to Oakland County, where they maintained their office. *Id.* at 18-19. On appeal, this Court held, "Wayne County constituted the proper venue for plaintiff's instant legal malpractice action because plaintiff's alleged injury occurred in Wayne County." *Id.* at 21. However, this Court also stated, "Because defendants' allegedly negligent omissions took place in Wayne County, Wayne County represents the situs of plaintiff's injury . . . ." *Id.* at 22. It went on to explain that the trial court had erred in ruling that the place of the injury was the location where the parties had initiated their attorney-client relationship. *Id.*

Defendants maintain that *Bass* dictates, in this case, that the situs of the alleged negligent acts represents the situs of plaintiffs' original injury. However, in *Bass,* the alleged negligent omissions of the plaintiff's attorneys occurred in court and initially manifested themselves in an injury to the plaintiff when the court entered an order dismissing her claim with prejudice. In other words, the alleged negligence and the plaintiff's original injury occurred in the same place. In contrast, the alleged negligent acts in this case, which allegedly occurred in more than one county, did not cause an injury to plaintiffs until plaintiffs *relied* on the information provided by defendants to make investment decisions. In their complaint, plaintiffs alleged:

> 18. Dimmitt exclusively relied upon the year-end and interim financial statements of Dimmitt, as audited and reviewed by Defendants, to gauge the financial position of the company and its viability. Additionally, those financial statements were directly tied to the amount of credit that the Bank would extend to Dimmitt, which in turn affected the very core of Dimmitt's factoring business operations.
>
> 19. The Dimmitt Investors, whose interests are represented by Plaintiff JMM, exclusively relied upon the year-end and interim financial statements provided by Defendants in their decision whether to invest, reinvest, or to what extent they should invest/reinvest in Dimmitt.

Although defendants may have been negligent in their data and information gathering, which they allegedly performed in Oakland County, and in compiling the data into reports, which they did in Wayne County, it was not until plaintiffs used the information that defendants negligently provided that the first "wrong or damage" was done "to another, either in his person, rights, reputation, or property." *Karpinski, supra* at 543 (internal quotation omitted). Therefore, we hold that defendants' alleged negligence in collecting and analyz-

ing data and information presented only the potential for future injury, but plaintiffs suffered the original injury when they relied on defendants' allegedly faulty information in making investment decisions. The alleged damages flowed from this original injury, which occurred at Dimmitt's place of business in Oakland County. Therefore, venue is proper in Oakland County.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.