**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Clifford W. Taylor      Michael F. Cavanagh
                        Elizabeth A. Weaver
                        Marilyn Kelly
                        Maura D. Corrigan
                        Robert P. Young, Jr.
                        Stephen J. Markman

FILED JULY 9, 2008

DIMMITT & OWENS FINANCIAL, INC.,
and JMM NOTEHOLDER
REPRESENTATIVE, L.L.C.,

      Plaintiffs-Appellants,

v                                                No. 134087

DELOITTE & TOUCHE (ISC), L.L.C.,
DELOITTE SERVICES LIMITED
PARTNERSHIP, a/k/a DELOITTE &
TOUCHE, L.L.P., and PHILIP JENNINGS,

      Defendants-Appellees,

and

JANE DOE and JOHN DOE,

      Defendants.

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

In this accounting malpractice action, we consider where an "original injury" occurs for purposes of determining venue under MCL 600.1629(1)(a) and (b). We conclude that the location of the original injury is where the first *actual* injury occurs that results from an act or omission of another, not where a plaintiff

contends that it first relied on the act or omission that caused the injury. Reliance creates only a *potential* injury, which is insufficient to state a negligence cause of action and, consequently, cannot constitute the original injury necessary to establish venue. Accordingly, we affirm the result the Court of Appeals reached, but reject its reasoning.

Plaintiffs Dimmitt & Owens Financial, Inc., and JMM Noteholder Representative, L.L.C., sued defendants Deloitte & Touche (ISC), L.L.C., Deloitte Services Limited Partnership, also known as Deloitte & Touche, L.L.P., and Philip Jennings (collectively, defendants) in the Wayne Circuit Court, alleging that defendants had committed malpractice when providing auditing services to Dimmitt. Defendants moved for a change of venue, contending that they had performed their auditing services at Dimmitt's offices in Oakland County. They contended that Oakland County was the "county in which the original injury occurred." MCL 600.1629(1)(a). Plaintiffs responded by arguing that defendants had generated the reports on which plaintiffs relied in defendants' Wayne County office. The trial court denied defendants' motion.

The Court of Appeals reversed, holding that the original injury occurred when plaintiffs first relied on defendants' allegedly faulty audit reports to make investment decisions at Dimmitt's place of business in Oakland County.[1] The

---

[1] *Dimmitt & Owens Financial, Inc, v Deloitte & Touche (ISC), LLC*, 274 Mich App 470, 480; 735 NW2d 288 (2007).

2

Court of Appeals concluded that venue was proper in Oakland County.[2] The Court of Appeals erred as a matter of law by focusing on where plaintiffs relied on defendants' work product because this reliance only created a potential injury. We hold that, for purposes of determining where venue is properly laid, the location of the original injury is where the first actual injury occurred that resulted from an act or omission of the accountant defendants. Here, the first injury plaintiffs allegedly suffered occurred when Dimmitt could not satisfy its financial obligations and was forced to liquidate its assets. Because both plaintiffs' principal places of business are in Oakland County, venue is proper in Oakland County. Therefore, although the reasoning of the Court of Appeals was erroneous, we affirm the result on other grounds.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs alleged that Dimmitt is a "traditional factor" that purchases accounts receivable at a discount from its customers. Factoring is a financial transaction that occurs when a business is owed money by a debtor. This business sells one or more of its invoices at a discount to a third party, the factor, to obtain cash. The debtor then directly pays the factor the full value of the invoice. The factor, however, bears the risk that the debtor will not pay the invoice.[3]

---

[2] *Id.*

[3] See Black's Law Dictionary (7th ed).

Dimmitt received financial backing for its factoring business through unsecured promissory notes from numerous investors.[4] By late 2002, it held approximately $16 million in debt on these promissory notes. These unsecured promissory notes were subordinate in interest to Dimmitt's obligation to Standard Federal Bank, which had provided Dimmitt with a line of credit to fund its factoring operations. Because the bank required Dimmitt to provide interim review and year-end financial statements, Dimmitt retained defendants to conduct financial audits and generate reports. Dimmitt would then distribute copies of the interim review and year-end financial statements to the bank and Dimmitt's investors.

Plaintiffs alleged that by 2003 Dimmitt was in default on its repayment obligation to the bank and could not meet its financial obligations to its investors. Dimmitt notified the bank of its impending default and presented a proposal for reorganization to its investors, which both the bank and the investors accepted. Dimmitt also entered into a forbearance agreement with the bank. Shortly thereafter, Dimmitt determined that it lacked the financial capacity to comply with either the forbearance agreement or the reorganization plan, and it elected to liquidate its assets.

---

[4] Plaintiff JMM Noteholder Representative, LLC, is composed of and represents the interests of these investors.

Plaintiffs alleged that the development of Dimmitt's proposal for reorganization and its negotiations with the bank were premised on the true value of Dimmitt's assets, as set forth in the financial statements audited by defendants. Subsequently, however, Dimmitt discovered that a significant portion of its assets had been vastly overstated in the financial statements audited and reviewed by defendants. Moreover, Dimmitt discovered accounting errors and omissions. In particular, the statements included accounts receivable that had been converted to "purchase discounts" that should have been considered debts rather than assets. Defendants had also failed to accurately assess which of Dimmitt's accounts receivable were actually collectible. Defendants had designated some accounts as assets that were actually uncollectible.

Plaintiffs filed a complaint in the Wayne Circuit Court, alleging accounting malpractice. They also alleged negligence, fraud/intentional misrepresentation, constructive fraud, breach of contract, and breach of fiduciary duty and sought a declaratory judgment. In lieu of answering plaintiffs' complaint, defendants sought a change of venue. Defendants contended that they had performed the accounting work relevant to plaintiffs' complaint at Dimmitt's offices in Oakland County. Defendants argued that MCL 600.1629(1)(a) required a transfer of venue from Wayne County to Oakland County because Oakland County was "the county in which the original injury occurred." Plaintiffs responded by asserting that the annual engagement letters, meetings and audit staffing decisions, letters seeking documents and spreadsheets in preparation for conducting an audit, document

5

review and analysis, compilation of a draft report, and issuance of the final financial statements had all originated from or occurred at defendants' headquarters in Wayne County. The trial court denied defendants' motion to change venue.

On defendants' application for leave to appeal, the Court of Appeals reversed, holding that the original injury occurred when plaintiffs first relied on the information that defendants had negligently provided.[5] It held that "defendants' alleged negligence in collecting and analyzing data and information presented only the potential for future injury, but plaintiffs suffered the original injury when they relied on defendants' allegedly faulty information in making investment decisions."[6] Those decisions occurred at Dimmitt's place of business. The Court thus held that venue was proper in Oakland County.[7]

Plaintiffs sought leave to appeal in this Court. We ordered oral argument on whether to grant plaintiffs' application or take other peremptory action.[8]

---

[5] *Dimmitt*, 274 Mich App at 480.

[6] *Id.*

[7] *Id.*

[8] *Dimmitt & Owens Financial, Inc v Deloitte & Touche (ISC), LLC*, 480 Mich 899 (2007).

6

## II. STANDARD OF REVIEW

Venue is controlled by statute in Michigan.[9] The Legislature is properly imbued with the power to establish the venue for causes of action.[10] This Court reviews de novo questions of statutory interpretation.[11] In doing so, our primary obligation is to discern legislative intent as reflected in the plain language of the statute.[12] When the language of a statute is unambiguous, the Legislature's intent is clear, and judicial construction is neither necessary nor permitted.[13]

We review a trial court's ruling in response to a motion to change venue under the "clearly erroneous" standard.[14] Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made.[15]

## III. LEGAL ANALYSIS

MCL 600.1629(1) provides, in relevant part:

> Subject to subsection (2), in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, all of the following apply:

---

[9] *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 309; 596 NW2d 591 (1999) (opinion by Kelly, J.); MCL 600.1629(1).

[10] *Coleman v Gurwin*, 443 Mich 59, 62; 503 NW2d 435 (1993).

[11] *Lash v Traverse City*, 479 Mich 180, 186; 735 NW2d 628 (2007).

[12] *Id*. at 187.

[13] *Id*.

[14] *Massey v Mandell*, 462 Mich 375, 379; 614 NW2d 70 (2000).

[15] *Id*.

(a) The county in which the original injury occurred and in which either of the following applies is a county in which to file and try the action:

(*i*) The defendant resides, has a place of business, or conducts business in that county.

(*ii*) The corporate registered office of a defendant is located in that county.

(b) If a county does not satisfy the criteria under subdivision (a), the county in which the original injury occurred and in which either of the following applies is a county in which to file and try the action:

(*i*) The plaintiff resides, has a place of business, or conducts business in that county.

(*ii*) The corporate registered office of a plaintiff is located in that county.

Before the statute was amended by 1995 PA 161 and 1995 PA 249, effective March 28, 1996, subsections 1(a) and (b) referred to a "county in which all or a part of the cause of action arose," rather than "the county in which the original injury occurred."

In *Lorencz v Ford Motor Co,* 439 Mich 370, 377; 483 NW2d 844 (1992), this Court interpreted the preamendment language to mean that "venue is proper where part or all of the cause of action arose, not merely at the situs of the injury." We explained:

It is clear that a breach of duty can occur in a different venue than the injury in a tort case. For example, in a products liability action, the product can be designed in one county, manufactured in another, and the injury may occur in yet a third. A plaintiff, alleging proper facts, can file suit in any one of these places because all or a part of the cause of action arose in any one of them. Under the plain

8

language of MCL 600.1629(1)(a); MSA 27A.1629(1)(a), venue would be properly laid in any one of them.[16]

This Court refined *Lorencz* in *Gross v Gen Motors Corp*, 448 Mich 147; 528 NW2d 707 (1995). In that case, the plaintiff argued that because damages are an element of a tort action, they establish a place or places where a tort action arises. We stated:

> Under MCL 600.1629; MSA 27A.1629, venue in a tort action is proper only at the situs of an injury, or in the place or places where the breach of a legal duty occurs that subsequently causes a person to suffer damages. Tangential damages that occur other than at such places are irrelevant to venue determination.[17]

In *Coleman v Gurwin,* 443 Mich 59; 503 NW2d 435 (1993), this Court analyzed the preamendment version of the statute in the context of a legal malpractice action. In that case, the defendant lawyer had allegedly given erroneous advice regarding a potential wrongful discharge claim and the applicable statute of limitations. This information induced the plaintiff to forgo filing suit until after the expiration of the period of limitations. Because the underlying suit arose in Wayne County and the defendant conducted business there, the trial court held that venue was properly laid in Wayne County. The Court of Appeals agreed. We reversed, stating:

> Although evidence of an underlying suit may be necessary to prove proximate cause and damages, because legal malpractice is a separate cause of action, venue is determined by the location of the

---

[16] *Lorencz*, 439 Mich at 375.

[17] *Gross*, 448 Mich at 165.

9

primary suit, i.e., where the alleged legal negligence occurred. The venue of a "suit within a suit" is not a part of the legal malpractice cause of action, therefore, it may not direct the venue of the legal malpractice action. A legal malpractice action arises solely in the county where the allegedly negligent legal representation occurred. The Court of Appeals, therefore, erred by holding that the venue of the "suit within a suit" controls the venue of a legal malpractice claim.[18]

We continued:

Not one of the parts of the cause of action for legal malpractice occurred in Wayne County; the plaintiff retained the attorney in Oakland County, the advice was given in Oakland County and received in Washtenaw County, and the statute of limitations ran while the plaintiff lived in Washtenaw County. Plaintiff's action did not arise in whole or in part in Wayne County because defendant's alleged malpractice occurred outside of the county. Although the underlying litigation would have occurred in Wayne County, the actual suit at issue—the legal malpractice between plaintiff and defendant—is premised solely on allegedly negligent advice given on soil beyond the boundaries of Wayne County.[19]

In *Bass v Combs,* 238 Mich App 16; 604 NW2d 727 (1999), the Court of Appeals analyzed the proper venue for a legal malpractice action under the current, amended version of the statute. In that case, the plaintiff filed a legal malpractice claim against the defendants when her underlying wrongful discharge case was dismissed with prejudice because the defendants had failed to respond to discovery requests and had failed to instruct the plaintiff to appear at a deposition. The plaintiff filed her legal malpractice claim in Wayne County, but the trial court

---

[18] *Coleman*, 443 Mich at 66.

[19] *Id.* at 66-67.

10

transferred the case to Oakland County because the parties had initiated their attorney-client relationship in Oakland County.

The plaintiff appealed the transfer of venue of her legal malpractice claim.[20] The Court of Appeals relied on the reasoning of *Coleman*, although *Coleman* had interpreted the preamendment version of the statute.[21] The Court of Appeals held that Wayne County was the proper venue for the malpractice action because the plaintiff had set forth several instances of "legal negligence" that occurred in Wayne County, namely, the defendants' failures to comply with court orders and otherwise properly handle the plaintiff's wrongful discharge case.[22]

We overrule *Bass* to the extent that it held that venue was proper in the county where the negligent omissions of the defendant occurred rather than the county in which the original injury suffered by the plaintiff occurred.[23] The amendment of MCL 600.1629(1)(a) and (b) changed the law of venue in tort cases and considerably limited the county in which a cause of action can be brought. The Legislature chose in the amended statute to adopt language that clearly and

---

[20] The Court of Appeals consolidated that appeal with her appeal of the trial court's dismissal of her underlying claim.

[21] *Bass*, 238 Mich App at 20-21.

[22] *Id*. at 21-22.

[23] Although the Court of Appeals improperly applied the reasoning of *Coleman* to the decision in *Bass*, it did reach the right result. The original injury in that case was the dismissal of the underlying suit that occurred in Wayne County. Therefore, venue was properly laid in Wayne County.

unambiguously limits venue to the situs of the original injury when either the defendant or the plaintiff resides, does business, or has a corporate office there.

The phrase "original injury" is not defined by statute, and this Court has not addressed it previously. The Court of Appeals analyzed what constitutes an original injury in *Taha v Basha Diagnostics, PC*, 275 Mich App 76, 78; 737 NW2d 844 (2007), holding that "to determine venue in tort actions, it is necessary to identify the actual place of occurrence of the damage or injury that gives rise to the plaintiff's cause of action."

While *Taha* involved a medical malpractice claim, its reasoning applies equally to the present case. In *Taha*, the plaintiff alleged that he fell and injured his wrist. A doctor treated the plaintiff for his wrist injury in Wayne County. An x-ray of the plaintiff's wrist was taken in Wayne County, but it was sent to the defendants in Oakland County to be read. The defendants allegedly misread the x-ray and communicated their findings to the doctor, who began treating the plaintiff in Wayne County based on the defendants' allegedly negligent reading of the x-ray. The Court of Appeals explained that "[i]n the medical-malpractice context, it is clear that the plaintiff's injury is not merely the defendant's alleged failure to meet the recognized standard of care. Instead, the plaintiff's injury is the corporeal harm *that results from* the defendant's alleged failure to meet the recognized standard of care."[24] Therefore, the Court of Appeals held that venue

---

[24] *Taha*, 275 Mich App at 79 (emphasis in original).

12

was proper in Wayne County—the county where the plaintiff suffered actual physical harm:

> The damage about which plaintiff complains in the case at bar is not the alleged misreading of the x-ray itself, but is the corporeal injury that plaintiff sustained as a result of defendants' alleged negligence. Contrary to defendants' contention, the mere misreading of the x-ray itself resulted in no actual harm, and therefore did not constitute an "injury" for medical-malpractice purposes. Similarly, the x-ray misreading, without more, did not become an "injury" within the meaning of MCL 600.1629 until it *resulted in* an actual injury to the plaintiff.[25]

*Taha* highlights the importance of separating a breach of the standard of care from the injury caused by the breach. Many negligent acts or omissions may occur that for whatever reason do not result in an actual injury. This Court has made clear, however, that a claim for negligence does not exist without actual injury.[26] Because MCL 600.1629(1)(a) and (b), as amended, refer to the county

---

[25] *Id.* at 79-80 (emphasis in original). The dissent's attempt to distinguish *Taha* fails. Justice Kelly notes that "the original injury in *Taha* was the *ineffective* treatment devised in reliance on the negligent radiological reading." *Post* at 5 (emphasis added). We agree. The plaintiff suffered an injury because he had been treated *ineffectively*, i.e., he was injured because he did not receive the treatment of his wrist that he needed for it to heal properly. The treatment plan created in reliance on the negligent reading of the x-ray created only a potential injury. Once that treatment plan proved ineffective, the plaintiff suffered an actual injury.

[26] *Henry v Dow Chem Co*, 473 Mich 63, 74-75; 701 NW2d 684 (2005). The dissent contends that *Henry* is inapposite because it involved the substantive merits of a negligence claim rather than the "matters of convenience" involved in a determination of proper venue. *Post* at 2-3. Justice Kelly seems to advocate a different definition of "injury" within the context of the venue statute. The text of the venue statute does not, however, suggest or support such a distinction. MCL 600.1629(1)(a) and (b) refer to the county where the "original injury" occurred. In *Henry*, this Court defined "injury" as an actual injury rather than a potential injury.

(continued…)

13

where the "original injury" occurred, we hold that courts must look to the first injury *resulting from* an act or omission of a defendant to determine where venue is proper. It is the original *injury*, not the original breach of the standard of care, that establishes venue under MCL 600.1629(1)(a) and (b).

In this case, plaintiffs alleged that defendants had failed to comply with the standard of care for accounting professionals by negligently conducting audits and preparing financial reports. They claimed that this breach of the standard of care constituted the original injury, which occurred when defendants signed off on and mailed their faulty reports. As illustrated in *Taha*, this analysis fails. A breach of the standard of care does not constitute an injury.

Plaintiffs also did not suffer their original injury when they relied on defendants' reports. The Court of Appeals held that "plaintiffs suffered the original injury when they *relied* on defendants' allegedly faulty information in making investment decisions."[27] We have explained, however, that "Michigan law requires more than a merely speculative injury. . . . It is a *present* injury, not fear of an injury in the future, that gives rise to a cause of action under negligence theory."[28] At the time of plaintiffs' reliance, plaintiffs suffered only a *potential* injury, namely, that their investment decisions based on defendants' negligence

(…continued)
No principled basis exists to alter the definition of "injury" because the text of the venue statute does not suggest any different meaning than that used in *Henry*.

[27] *Dimmitt*, 274 Mich App at 480 (emphasis added).

[28] *Henry,* 473 Mich at 72-73 (emphasis in original).

14

*might* turn out to be poor ones that *might* injure plaintiffs. The original injury did not occur until plaintiffs allegedly suffered an *actual* injury as a result of their reliance on defendants' services. The first actual injury plaintiffs allegedly suffered occurred when Dimmitt could not satisfy its financial obligations and was forced to liquidate its assets.[29] Both plaintiffs' principal places of business are in Oakland County, and, therefore, the alleged original injury was suffered in Oakland County. Accordingly, venue was properly laid in Oakland County.

## IV. CONCLUSION

The Court of Appeals incorrectly focused its inquiry on where plaintiffs relied on defendants' work product, rather than where plaintiffs suffered the original, actual injury. Nevertheless, it reached the correct result in concluding that venue was proper in Oakland County. Both plaintiffs' alleged injuries occurred when Dimmitt was unable to satisfy its financial obligations and was forced to liquidate its assets. That injury occurred in Oakland County, the location of both plaintiffs' principal places of business.

For these reasons, we affirm the result reached by the Court of Appeals and

---

[29] While in this case a significant amount of time elapsed between plaintiffs' reliance and the injury, there may be situations in which reliance could produce an immediate injury that would constitute an original injury. We reiterate that the only relevant question for venue purposes is when a plaintiff suffered an actual injury.

remand this case to the Wayne Circuit Court for entry of an order changing venue to the Oakland Circuit Court.

Maura D. Corrigan
Clifford W. Taylor
Elizabeth A. Weaver
Robert P. Young, Jr.
Stephen J. Markman

16

S T A T E   O F   M I C H I G A N

SUPREME COURT

DIMMITT & OWENS FINANCIAL, INC.,
and JMM NOTEHOLDER
REPRESENTATIVE, L.L.C.,

      Plaintiffs-Appellants,

v                                     No. 134087

DELOITTE & TOUCHE (ISC), L.L.C.,
DELOITTE SERVICES LIMITED
PARTNERSHIP, also known as DELOITTE
& TOUCHE, L.L.P., and PHILIP
JENNINGS,

      Defendant-Appellees,
and

JANE DOE and JOHN DOE,

      Defendants.

_____

KELLY, J. (*concurring in part and dissenting in part*).

I agree that "original injury" as used in the tort venue statute[1] is not synonymous with the breach of a duty and that venue here is proper in Oakland County. But I disagree with the majority's conclusion that the "original injury" for venue purposes occurred when plaintiff Dimmitt & Owens Financial, Inc.

_____

[1] MCL 600.1629(1)(a) and (b).

(Dimmitt) became unable to meet its financial obligations and elected to liquidate its assets.

The majority focuses on when Dimmitt's damages emanating from the original injury became manifest. But I find that the original injury occurred earlier, when Dimmitt made investment decisions in reliance on the allegedly negligent audit report of defendant Deloitte & Touche (ISC), L.L.C. The Court of Appeals reached a substantially similar conclusion when it stated that "plaintiffs suffered the original injury when they relied on defendants' allegedly faulty information in making investment decisions. The alleged damages flowed from this original injury, which occurred at Dimmitt's place of business in Oakland County."[2] I would affirm the Court of Appeals conclusion.

The majority relies heavily on *Henry v Dow Chem Co*[3] to redefine the phrase "original injury" as "actual," rather than "potential," injury.[4] I have several objections to this reliance on *Henry*.

First, I fail to see how *Henry* is relevant to determining venue. There, a majority of the Court refused to recognize a cause of action for medical monitoring. But venue is "a matter of convenience,"[5] not a question of whether a

---

[2] *Dimmitt & Owens Financial, Inc, v Deloitte & Touche (ISC), LLC*, 274 Mich App 470, 480; 735 NW2d 288 (2007).

[3] *Henry v Dow Chem Co*, 473 Mich 63, 72-73; 701 NW2d 684 (2005).

[4] *Ante* at 14-15.

[5] *Peplinski v Employment Security Comm*, 359 Mich 665, 668; 103 NW2d 454 (1960).

plaintiff has stated a legally cognizable cause of action.[6] Were venue tied to the legal sufficiency of a complaint, no plaintiff would ever have a forum in which to make "a good-faith argument for the extension, modification, or reversal of existing law," which is something Michigan's court rules expressly allow.[7]

Second, the majority in *Henry* effectively equated actual injury with manifest injury.[8] In his dissent in *Henry*, Justice Cavanagh explained that injuries to legally protected interests are actual injuries, even when their manifestation is latent.[9] I joined the dissent in *Henry* and continue to disagree with the majority's definition of injury in that case to exclude latent injuries.

Third, the majority in *Henry* noted that this Court had not "finely delineated the distinction between an 'injury' and the 'damages' flowing therefrom . . . ."[10] The majority in *Henry* then immediately conflated the two.[11] But the words "injury" and "damages" appear in separate elements of the cause of action for

---

[6] In order to avoid the plaintiffs' showing financial injury for the cost of medical monitoring, the majority in *Henry* unjustifiably attempted to limit Michigan negligence law to cases showing "present physical injury." *Henry*, 473 Mich at 75, 78. If Michigan law were so limited, the instant claim for accounting malpractice would not be cognizable in Michigan because plaintiffs have no basis to allege present physical injury.

[7] MCR 2.114(D)(2).

[8] *Henry*, 473 Mich at 84, 100-101.

[9] *Id*. at 110 (Cavanagh, J., dissenting), citing cases from other jurisdictions.

[10] *Id.* at 75.

[11] *Id*.

negligence.[12] And "injury" in the first instance is a "violation of another's legal right . . . ."[13] Damages may eventually emanate from the violation.

In this case, the original injury to plaintiff occurred when it made business decisions in reliance on an allegedly negligent audit. Plaintiff, a business entity, had a right to expect that the audit results were correct and to make its business decisions on the basis of those results. Plaintiff was initially injured when it exercised this right. Damages followed.

This conclusion is in line with the Court of Appeals decision in *Taha v Basha Diagnostics, PC*,[14] which the majority quotes with approval.[15] The plaintiff in *Taha* was treated for a broken wrist in Wayne County. In beginning the treatment, plaintiff's physician relied on x-rays that the Oakland County defendants misread. The Court of Appeals held that "the location of plaintiff's

---

[12] The elements of a cause of action for negligence are:

    1. The existence of a legal duty by defendant toward plaintiff;

    2. the breach of such duty;

    3. the proximate causal relation between the breach of such duty and an *injury* to the plaintiff; and

    4. the plaintiff must have suffered *damages.* [*Lorencz v Ford Motor Co*, 439 Mich 370, 375; 483 NW2d 844 (1992) (citations omitted; emphasis added).]

[13] Black's Law Dictionary (7th ed).

[14] *Taha v Basha Diagnostics, PC*, 275 Mich App 76; 737 NW2d 844 (2007).

[15] *Ante* at 12-13.

4

treatment by [his doctor] following defendants' services was determinative of venue in this case."[16] The "actual harm" occurred "at [his doctor's] office in Wayne County."[17] While the Court of Appeals alternatively referred to plaintiff's "corporeal injury,"[18] it never identified that injury separately from the treatment of plaintiff's pre-existent broken wrist.

The plaintiff in *Taha* was entitled to receive proper medical treatment based on a correct reading of his x-ray. He was injured when an improper treatment plan was devised on the basis of an incorrect radiological reading. Thus, the original injury in *Taha* was the ineffective treatment devised in reliance on the negligent radiological reading. As a result of that injury, the plaintiff claimed some unspecified damage to his already broken wrist.

Acts done in reliance on someone's negligence may not always be at stake in tort venue cases. Additionally, the distinction between injury and damages may not always be relevant in determining the proper venue. In this case, both the original injury and the damages following from that injury occurred in Oakland County, where both Dimmitt and its investors' organization, plaintiff JMM Noteholder Representative, L.L.C., had their headquarters. Nevertheless, it is important not to conflate injury and damages, because the tort venue statute speaks of "original injury," and damages follow only after that original injury has

---

[16] *Taha,* 275 Mich App at 80.

[17] *Id*.

[18] *Id*. at 79.

5

occurred. Under the current tort venue statute, when and where damages manifest themselves is not important for venue purposes.

I would affirm the Court of Appeals decision.

Marilyn Kelly

CAVANAGH, J.  I would deny leave to appeal.

Michael F. Cavanagh