*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

DEPARTMENT OF ENVIRONMENTAL
QUALITY,

UNPUBLISHED
July 22, 2021

Plaintiff-Appellee,

v

No. 351285
Ingham Circuit Court
LC No. 18-000015-CE

ERIC KIRBY & SONS, LLC,

Defendant-Appellant.

Before: FORT HOOD, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Eric Kirby & Sons, LLC filled in and altered wetlands on its agricultural property in Arenac County despite repeated notices from the Department of Environmental Quality (DEQ)[1] that its conduct was illegal. The DEQ levied fines and filed suit in Ingham Circuit Court to enjoin Kirby's activities. Kirby raises several challenges, all without merit. We affirm.

## I. BACKGROUND

David Schmidt, principal member of Eric Kirby & Sons, LLC, purchased a 120-acre plot in Arenac County in 2013, with the intent of either farming it or leasing it for farming purposes. In order to expand the area of farmable land, Schmidt filled in wetlands and altered the topography to stop water from pooling in those areas. The water and sediment instead flowed into a nearby creek. Schmidt did not secure the proper permits first. And Schmidt pushed forward despite several warnings that his conduct was illegal.

Schmidt's actions violated several provisions of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.* Kirby's own expert admitted that the property contained 3.29 acres of wetlands subject to regulation. The circuit court eventually ruled that the property held 6.21 acres of wetland, and almost five acres were illegally impacted. The court

---

[1] The DEQ has since been renamed the Department of Environment, Great Lakes, and Energy.

ordered Kirby to pay $168,000 in fines for violations of Part 303 of the act (governing wetlands), $6,250 in fines relating to violation of Part 31 (governing sediment-runoff), and $2,500 in fines for violations of Part 91 (governing changes to the earth). The court also ordered Kirby to return the wetlands to their natural condition.

## II. VENUE

Early in the proceedings, Kirby filed a motion to change venue to Arenac County where the land is located. In its motion, Kirby admitted that venue was proper in Ingham County,[2] but asserted that Arenac County would be a more convenient venue. The circuit court rejected this motion. We review for clear error the circuit court's denial of the motion to change venue. *Dimmitt & Owens Financial Inc v Deloitte & Touche (ISC), LLC*, 481 Mich 618, 624; 752 NW2d 37 (2008). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*.

Kirby brought its motion to change venue under MCR 2.222(A), which provides, "The court may order a change of venue of a civil action . . . for the convenience of parties and witnesses or when an impartial trial cannot be had where the action is pending. . . ." Kirby, as the moving party, bore the burden of establishing the need to change the venue. *Chilingirian v City of Fraser*, 182 Mich App 163, 165; 451 NW2d 451 (1989). A plaintiff's venue choice must be "accorded deference" and the party seeking a change must make "a persuasive showing" that a change is necessary. *Id*.

Kirby argued below that "all witnesses relevant to the operation and maintenance of the farmland are located in and around Arenac and Bay Counties, as is the farmland itself." Schmidt and defense counsel were both based in Bay City. The DEQ retorted with evidence that Bay City is a 30-minute drive from the Arenac County courthouse and a 90-minute drive to the Ingham County courthouse. Changing venue would save defense counsel and *some* of its witnesses 60 minutes of travel time. However, the DEQ argued, changing venue would add two hours of travel time for the *all* of the DEQ's witnesses, who were based in and around Lansing. The court deferred to the plaintiff's choice of venue and noted that Kirby failed to adequately support that Ingham County was so inconvenient as to warrant a move. Instead, the move would significantly inconvenience the DEQ and its witnesses.

The court's decision was not clearly erroneous. Kirby made only vague assertions about the locations of its witnesses. Such vague assertions did not persuasively show inconvenience or prejudice sufficient to overcome the deference afforded the DEQ's choice of venue. Kirby did not actually establish that the majority of its witnesses lived in the area of the property in question to support its requested change. Nor did Kirby establish that the distance between Arenac and Bay Counties and Ingham County was so great as to prejudice the defense. Compare *Chilingirian*, 182 Mich App at 165 ("The inconvenience caused by travel between two adjoining counties does not constitute a 'persuasive showing' of inconvenience or prejudice which would justify a change of venue.); *Kohn v Ford Motor Co*, 151 Mich App 300, 305-306; 390 NW2d 709 (1986) (upholding the change in venue from Wayne to Tuscola County where the bus accident occurred, the witnesses

---

[2] MCL 324.30316(1) permits actions for violation of the NREPA to be filed in Ingham County.

to the accident and the witnesses who inspected and maintained the bus lived, the plaintiff lived, and the county officials necessary to resolving the action were located); *Hunter v Doe*, 51 Mich App 465, 466-467; 233 NW2d 39 (1975) (upholding the change of venue from Wayne to Oakland County where all but one of the witnesses lived).

Kirby further asserts that a change in venue was required because it was accused of crimes against the environment and therefore was entitled to a local jury trial. MCR 2.508(B)(1) provides that any party may file "a written demand for a jury trial within 28 days after the filing of the answer or a timely reply." The demanding party must pay the jury fee along with the demand. *Id*. Failure to make the demand or pay the fee amounts to a waiver of the right to a jury trial. MCR 2.508(G)(1). Kirby never filed a jury trial demand or submitted the jury fee. Kirby thereby waived its right to a trial by jury.

However, Kirby contends that US Const, Am VII preserves the right of a party in a civil suit to a jury "where the value in controversy shall exceed twenty dollars." However, this Court held in *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 310-311; 885 NW2d 892 (2015) (quotation marks and citation omitted), a case brought under Part 303 of the NREPA, that US Const, Am VII "does not confer a federal constitutional right to trial by jury in state court civil cases." Although Kirby complains that *Morley* was wrongly decided, we are bound to follow it under MCR 7.215(J)(1).

## III. LENGTH OF MOTION BRIEFS

Kirby next challenges the circuit court's decision to permit the DEQ to file summary disposition pleadings in excess of the 20-page limit provided in MCR 2.119(A)(2)(a). We review this issue for an abuse of discretion. See, generally, *People v Leonard*, 224 Mich App 569, 578; 569 NW2d 663 (1997) (dealing with whether the court should have allowed a prosecutor further time to respond to a lengthy motion before granting the defendant a new trial). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

MCR 2.119(A)(2)(a) provides that "[e]xcept as permitted by the court, the combined length of any motion and brief, or of a response and brief, may not exceed 20 pages double spaced, exclusive of attachments and exhibits." The court permitted the DEQ to file a 31-page combined motion and brief. The DEQ filed the motion to exceed the page limit on the same day it filed the summary disposition motion. Both were timely filed. MCL 2.116(G)(1)(a)(*i*). However, the court neglected to rule on the motion until a few days before the hearing. In any event, Kirby had more than sufficient notice as it had the DEQ's brief in hand well in advance of the hearing.

Despite having the motion, Kirby did not timely respond. MCL 2.116(G)(1)(a)(*ii*) provides that "any response to [a summary-disposition] motion (including brief and any affidavits) must be filed and served at least 7 days before the hearing." Kirby did not ask for a time extension and filed its response to the DEQ's summary disposition motion the day before the hearing. The court reasonably noted that the DEQ had properly filed and noticed its motion to exceed the page limit

and that Kirby was at fault for filing a response to the summary-disposition motion, unsupported by documentation, one day before the motion hearing. The court did not abuse its discretion.[3]

## IV. FINE ASSESSMENT

Kirby next challenges the $168,000 fine assessed for its violations of Part 303 of the NREPA. We review for an abuse of discretion the court's imposed fine for the Part 303 violations. *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 44; 896 NW2d 39 (2016).

Helana Nelson, a DEQ environmental-quality specialist, calculated the fines requested by the department. Nelson testified that a $10,000 daily fine was authorized for violations of Part 303. MCL 324.30316(1). Kirby's violations had been ongoing for 1,814 days and had not ceased. Accordingly, the DEQ could have requested fines up to $18,140,000.

Nelson further explained:

> Under [the DEQ's] penalty matrix, in the case of a multi-day violation, a penalty is to be calculated both by imposing a primary penalty between $0 to $10,000 for the initial violation and then by applying a per day penalty looking principally to factors such as the size and extent of the violation and the degree of impact to the environment, natural resources, and public health, then adjusted based on the cooperation or recalcitrance of the violator.

Nelson stated that the degree of impact on the environment and public health was " 'medium' " but that the "magnitude of the violation was high," because the 6.21 acres involved was "larger than most violations documented by" the DEQ. Nelson opined that Schmidt's argumentative and uncooperative stance could warrant an upward adjustment to the fine, but she chose not to penalize him. Instead, Nelson recommended a penalty of "$168,000, which represents an initial primary penalty of $8,000 plus an $800 per day penalty capped at 200 days of violation in consideration of the extended length of the ongoing violation."

In accepting the DEQ's recommended fine, the court emphasized the length of Kirby's violation during which it made no "effort to fix any portion of even the uncontested areas of impact." The court described Nelson's computation of the Part 303 fine as "forgiving." Based on the record evidence and the fines permitted under the statute, we cannot conclude that the circuit court abused its discretion.

---

[3] Kirby contends that if we accept that the circuit court improperly permitted the DEQ to file a 31-page summary disposition motion, then we must invalidate the circuit court's rulings regarding the exclusion of testimony because they arose out of the improper page-limit ruling. Specifically, Kirby states, "Each additional motion brought by [Kirby] was predicated upon the [c]ourt's findings applicable to the first nonconforming motion, and should be vacated due to the 'fruit from the poisonous tree.' " First, the page-limit ruling was well within the court's discretion. Second, the orders regarding the exclusion of testimony were entered *by stipulation*.

Kirby cites the lower fines assessed in other cases in contending that the circuit court in this case abused its discretion. In *Morley*, 314 Mich App at 308, the defendant was assessed a $30,000 fine for impacting 4.1 acres of wetlands. But it is not apparent that the defendant in *Morley* allowed the violations to continue for the extremely lengthy amount of time that they continued in the present case. In *Gomez*, 318 Mich App at 6, the defendants were assessed a $10,000 fine for impacting 1.2 acres of wetlands. The acreage at issue in the present case was substantially larger than that at issue in *Gomez*. Also, the *Gomez* Court stated:

> Additionally, when divided per diem, based on the limited [timeframe] established by the court, the fine imposed was only approximately $5.50 a day, as opposed to the $10,000 a day fine authorized by statute. Accordingly, the trial court's imposition of a total fine of $10,000 was not an unprincipled outcome, especially, as defendants emphasize, in light of the lack of evidence that they acted in willful defiance of the law. [*Id*. at 45-46.]

Here, the $168,000 fine for 1,814 days of violation amounted to a fine of $93.61 a day. There was significant evidence that Kirby acted in willful defiance of the law. The fine assessment was supportable even under the law cited by Kirby.

We affirm.

/s/ Karen M. Fort Hood
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher