*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GREGORY HALL TRUST.

---

CHERYL MCGUIRE and MICHAEL HALL, as Co-Trustees of the GREGORY HALL TRUST AGREEMENT,

        Appellees,

v

KENNETH HALL, as Co-Trustee of the GREGORY HALL TRUST AGREEMENT,

        Appellant.

FOR PUBLICATION
March 16, 2023
9:15 a.m.

Nos. 361528; 362467
Oakland Probate Court
LC No. 2018-383234-TV

---

Before: MURRAY, P.J., and RIORDAN and YATES, JJ.

YATES, J.

Gregory Hall created a trust to provide the fruits of his labors in equal shares to his children, Kenneth Hall, Cheryl McGuire, and Michael Hall.[1] Years later, Gregory deeded his house valued at $500,000 to Kenneth and created an Excel spreadsheet reflecting the transfer of the house. After Gregory died, Kenneth asserted that the house was a gift to him, so he was entitled to one-third of the remaining assets, but his siblings characterized the house as an advance distribution to Kenneth that reduced by $500,000 his claim to the remaining assets. After years of litigation, the trial court first granted partial summary disposition to Kenneth's siblings and then entered a default judgment in their favor as a discovery sanction. Kenneth challenges those rulings on appeal. We affirm.

---

[1] The trust was also established for the benefit of Gregory's wife, Regina Hall, but she predeceased Gregory by seven years.

# I. FACTUAL BACKGROUND

Gregory Hall created a trust for the benefit of his three children on November 2, 1993, and subsequently amended and restated it on March 22, 2005. The trust provided that each child was to receive an equal share of the trust corpus after Gregory's death. The trust enabled Gregory "at any time during his lifetime by an instrument in writing delivered to the Trustee to modify, alter, amend or revoke this Agreement, in whole or in part." Before Gregory's death, he and Kenneth discussed Gregory's house in Oakland Township. They initially contemplated that Gregory would sell the house to Kenneth, but on October 15, 2014, Gregory conveyed the house to Kenneth and his wife, Beth, for no consideration.

On September 23, 2014, more than three weeks before the transfer of the house, Gregory created an Excel spreadsheet. The contents of the spreadsheet when Gregory transferred his house are not known, but the iteration from January 6, 2018, bears the title "Gregory M. Hall – Assets + Annuities as of October 13th 2017," and lists Gregory's assets. The spreadsheet includes a section entitled "Distribution" that reflects the conveyance of the $500,000 house to Kenneth:

| Distribution | Cheryl Mcguire | Michael Hall | Kenneth Hall | Rosalyn Orick |
|---|---|---|---|---|
| First amendment to trust agreement | | | | $250,000.00 |
| Accura to Michael Hall | | | | |
| Rochester Home to Kenneth Hall | | | $500,000.00 | |
| | | | | |
| | | | | |
| Total Estate (Death Tax ?) | | | | |
| $6,721,296.89 | $1,990,432.30 | $1,990,432.30 | $1,990,432.30 | $250,000.00 |

Before Gregory died, Kenneth and his brother Michael found the Excel spreadsheet on Gregory's personal computer, and the file also was later found on a separate flash drive labeled "files."

After Gregory died on April 11, 2018, Kenneth and his siblings became co-trustees of the trust. Kenneth's siblings petitioned for limited supervision of the trust and approval of a proposed plan of distribution that treated the transfer of the house as a $500,000 advance of Kenneth's share. Kenneth countered that Gregory's *inter vivos* transfer of the house was a gift, so he was entitled to one-third of the remaining trust corpus. A protracted discovery process ensued, and eventually the siblings moved for summary disposition. On May 4, 2022, the trial court awarded partial summary disposition to Kenneth's siblings. Then, on July 18, 2022, the trial court entered a default judgment against Kenneth and in favor of his siblings as a discovery sanction. Kenneth appealed both of the rulings, thereby bringing the entire dispute before this Court for resolution.

# II. LEGAL ANALYSIS

Kenneth asserts that the trial court improperly entered a default judgment against him as a discovery sanction under MCR 2.313(B)(2)(c) and incorrectly granted partial summary disposition to his siblings under MCR 2.116(C)(10). "We review a trial court's decision regarding discovery

sanctions for an abuse of discretion." *Swain v Morse*, 332 Mich App 510, 518 n 8; 957 NW2d 396 (2020). A trial court commits an abuse of its discretion when its "decision falls outside the range of reasonable outcomes." *Id*. "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When addressing a motion for summary disposition under MCR 2.116(C)(10), "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. at 160. The motion "may only be granted when there is no genuine issue of material fact." *Id*. Such a genuine issue of material fact exists "when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks omitted). Applying these standards, we must consider each of Kenneth's challenges to the trial court's rulings.

## A. DISCOVERY SANCTIONS

The discovery process in this case turned into an expensive, time-consuming catastrophe. On December 9, 2019, Cheryl McGuire and Michael Hall (petitioners) filed a "petition for limited supervision to approve plan of distribution" requesting a determination that the house that Gregory transferred to Kenneth and his wife "was an advancement in the amount of $500,000 of Kenneth's ultimate distributive share of the Trust." Two and a half years later, on July 18, 2022, the trial court issued a default judgment against Kenneth as a discovery sanction under MCR 2.313(B)(2)(c) after holding an extensive hearing on that date. Along the way, the trial court at first denied motions to sanction Kenneth, then eventually imposed financial sanctions, and finally found that his discovery violations were so persistent and egregious that a default judgment against him was the appropriate penalty. The detailed record of the discovery process convinces us that the trial court did not abuse its discretion in imposing the most severe discovery sanction available under Michigan law.

Because the parties' dispute involved the proper treatment for trust purposes of the transfer of Gregory's house to Kenneth, the communications between those two was a matter of paramount concern. First, preservation of electronic communications between those two was essential to the proper characterization of the transfer of the house. Second, because Gregory had died before the dispute between Kenneth and petitioners erupted, the retrieval of electronically stored information (ESI) created or maintained by Kenneth was necessary. Accordingly, on January 21, 2020, counsel for petitioners sent a letter to Kenneth's counsel and Kenneth's wife, Beth, reminding them of their obligation to preserve all ESI potentially relevant to issues raised in the litigation. In addition, the trial court entered an order on June 3, 2020, directing Kenneth and Beth to produce their electronic devices for retrieval and preservation of ESI. But Kenneth flouted the trial court's orders regarding discovery, thereby extending and complicating the crucial project of making ESI available for the development of a clear picture of how and why Gregory transferred his house to Kenneth.

The trial court had ample justification to order production of electronic devices during the discovery process. On January 23, 2020, Kenneth's wife, Beth, exchanged her iPhone for a new one. Analysis of Gregory's computer revealed that nearly all his e-mails from 2012 and 2013 had been deleted. When Kenneth received a discovery request to produce electronic communications relevant to the transfer of the house, he produced three e-mails that had been sent to Gregory but were no longer on Gregory's computer. Additionally, Kenneth provided a copy of a text message that Beth had sent to Gregory referencing a prior e-mail, but that e-mail was no longer on Gregory's

computer.  Petitioners moved for access to Kenneth's and Beth's electronic devices, so on June 3, 2020, the trial court ordered Beth to produce her personal cellular phone and computer or laptop, directed Kenneth to produce his personal cellular phone and computer or laptop, and ordered Rite Machine Products to produce Kenneth's work computer for inspection and imaging.[2]  The order also explained that a data-extraction vendor should search the devices using an agreed-upon search protocol and then provide all items meeting the search criteria to Kenneth, who, within seven days, would produce "a privilege/objection log detailing any ESI that counsel believes should not be produced on grounds of relevance or privilege."  The trial court agreed to conduct an *in camera* review of contested items on the privilege/objection log to determine which items should be turned over to petitioners.

The parties signed an ESI agreement on September 22, 2020, defining the rules for carrying out the trial court's compulsion order entered on June 3, 2020.  That agreement not only identified D4 Technology & eDiscovery (D4) as the third-party vendor that would retrieve and manage ESI, but also prescribed "a two-leveled search" for ESI that D4 would conduct.  Specifically, D4 would first use a set of terms at "level one" to generate an initial list of documents, and then a "level two" search would take place using other search terms.  As a result, only documents containing at least one term from the level-one search terms *and* one term from the level-two search terms would be retrieved by D4 for potential production to petitioners.  D4 would then submit those documents to Kenneth to enable him to prepare privilege/relevance objection logs.  Thus, the ground rules were put in place for a smooth ESI discovery process.

Pursuant to the terms of the ESI agreement, D4 initially imaged six devices: (1) an HP 600 computer that was Kenneth's work computer; (2) a Lenovo laptop that was Kenneth's and Beth's personal laptop; (3) an HP 400 computer, which apparently belonged to Kenneth's co-workers; (4) a Memorex USB drive to which Kenneth had transferred files; (5) Kenneth's current cell phone; and (6) Beth's current cell phone.  D4 searched all "active" data on those devices using the agreed-upon two-tiered search method.  But with respect to "unallocated data" or "deleted data," D4 was unable to conduct a two-tiered search.  In January 2021, D4 created unallocated-space reports for the HP 600, the HP 400, and the Memorex USB drive and sent those reports to Kenneth's counsel, who asked whether a level-one or a level-two search was conducted for the unallocated space.  He found out that only a level-one search had taken place because it was technically impossible to do otherwise.[3]  Kenneth's counsel thereafter produced privilege logs for the Lenovo laptop and the Memorex USB drive.

---

[2] Rite Machine Products is the family business Gregory and Regina Hall started.  The three parties are now equal co-owners of the company.

[3] John Clingerman, a D4 representative, explained that when he has identifiable files to search, he can easily run a two-tiered search on each file.  But for unallocated data, there is no "file" to search, so he cannot employ the two-tiered-search process for unallocated data.  Clingerman testified that the HP 600 in particular had a 500 GB hard drive, and that 311 GB of data was "unallocated."  He stated that it was impossible to conduct a two-tiered search on unallocated data.  Clingerman explained when data is saved to a hard drive, it does not save the data in sequential or consecutive

On January 26, 2021, the trial court held the first of seven discovery hearings in that year. Petitioners accused Kenneth and his wife, Beth, of engaging in "impermissible spoliation with an intent to deprive" petitioners and the court of valuable information by withholding a USB drive to which Kenneth had transferred data from the HP 600 computer. The data was no longer stored on the HP 600 computer that had been provided to D4 for imaging. Beyond that, Beth used an iPhone that was not turned over to either D4 or petitioners, so that data (including a trove of e-mails) was not made available to D4 even though D4 imaged Beth's current iPhone, which replaced the iPhone at issue on January 23, 2020. At the end of the hearing, the trial court imposed no sanctions upon Kenneth, but the trial court reaffirmed that all ESI "must be preserved[,]" which meant "[n]o more deleting, no more downloading and deleting, no more nothing. Just preserve it all as it is."

Petitioners presented a proposed order reflecting the trial court's rulings at the hearing that took place on January 26, 2021, but Kenneth objected to the proposed order, so the trial court held another hearing on March 10, 2021, to resolve the dispute about the order. The trial court not only overruled Kenneth's objections and authorized the filing of petitioners' proposed order, but also voiced concerns "that somebody plugged a device in there that would download information off the computer" and that Beth's "phone was a recent acquisition and we may have to look at other devices to find the e-mails during the relevant time period." The order entered on March 15, 2021, directed Kenneth and Beth to "produce the login credentials for all email accounts used by either or both of them," required Beth to "produce her old iPhone . . . for ESI collection[,]" and reaffirmed that "the parties shall preserve all ESI in whatever form and in whatever location it exists."

On April 7, 2021, petitioners moved to compel production of Beth's oldest iPhone—known as the "two phones ago" device[4]—for imaging by D4 and to instruct Kenneth to provide a privilege log in response to D4's "unallocated space report for the HP 600" computer. Petitioners requested sanctions for those alleged discovery violations. After noting "[t]here was no reason whatsoever to deny access to that phone and a proper opportunity to image it[,]" the trial court not only granted petitioners' motion for production of the oldest iPhone, but also awarded sanctions "against both Ken Hall and his attorney for failure to produce the phone[.]" Those sanctions took the forms of "the expenses of that motion" to compel "and the expenses of the hearing on that motion[.]" In

---

sectors or blocks. The data for the file is actually scattered all over the hard drive. If somebody "deletes" a file, the data nevertheless remains (until overwritten), but the "instructions" to find the data for the file and piece it together are removed. He analogized unallocated space to a landfill, where pieces and fragments of data are everywhere in a haphazard fashion. Thus, D4 essentially used level-two search terms as part of the level-one search terms for the unallocated space.

[4] The circumstances concerning discovery of that iPhone are murky. Kenneth's counsel stated on October 6, 2020, that Beth "just" brought to his attention the iPhone that "originally belonged to their son," that Beth also used it, and that Kenneth and Beth "do not remember when Beth began using it, how long she used it, and when she stopped using it." But Kenneth said that he and Beth were aware of that iPhone's existence soon after the initial request for discovery in early 2020, and that he took photographs of text messages from that iPhone and tendered them in March of 2020.

addition, the trial court instructed Kenneth to provide a privilege log for the D4 unallocated-space report and imposed monetary sanctions on Kenneth for failing to do so in a timely manner.

In the wake of the trial court's order, Kenneth provided Beth's oldest iPhone to D4, but the issue of the privilege log for the unallocated-space report remained unresolved. Although Kenneth had furnished a response to the report, he had identified thousands of items to be withheld because of "personal/relevance" concerns. On May 19, 2021, petitioners filed another motion to compel, characterizing the vague references to "personal/relevance" concerns as woefully inadequate. In addition, petitioners complained that Kenneth provided the same types of vague references to other reports that D4 had more recently supplied for e-mail extractions and other ESI. Petitioners alleged that, as a result, the entire ESI discovery process had ground to a halt. On June 8, 2021, the trial court conducted yet another hearing and observed that "Kenneth Hall and his attorney have resisted discovery at every turn."[5] After denying an audacious motion from Kenneth for sanctions, the trial court turned to the issue of the privilege logs. The trial court explained that the privilege logs are "useless without dates, without a description of the information and why it's not relevant." But in an effort to resolve the simmering dispute about production and privilege logs, the trial court asked to hear from a D4 witness at an evidentiary hearing to help clarify the matters in contention. Thus, in an abundance of caution, the trial court reserved its decisions on petitioners' motion to compel and their request for sanctions until D4 could provide valuable information on the record.

On August 2, 2021, John Clingerman from D4 testified at an evidentiary hearing at which petitioners' counsel, Kenneth's attorney, and the trial court questioned him at great length. At the end of that hearing, the trial court asked petitioners to have D4 break up the data from the HP 600 unallocated space into manageable blocks that Kenneth's attorney "can go through and release one block at a time." The trial court made clear that Kenneth's attorney would have "seven days from whenever the blocks are sent to him" to prepare a privilege log for each block. But the trial court softened that directive by noting that "[a]s long as he is producing them in a reasonable amount of time, I'm not going to hold him in violation of any orders." The trial court left no doubt, however, that the privilege logs had to provide more information than the ubiquitous "personal/relevance" references Kenneth had offered. The trial court memorialized all of those rulings in an order issued on August 11, 2021, stating that the privilege logs had to "identify the description of the documents withheld, the contents of the documents, the senders and/or recipients of the documents, the date of the documents, and the nature of the objection to providing the documents."

Alas, the trial court's pellucid order did not resolve the issue of the privilege logs. Instead, on September 29, 2021, petitioners filed a motion "to compel production of revised privilege logs" in accordance with the trial court's order entered on August 11, 2021, asserting that Kenneth had not provided the detailed information mandated by the order. The trial court addressed that motion at a hearing on October 13, 2021, and informed Kenneth's counsel that "I don't think you did what I ordered" in terms of the privilege logs. To break the logjam, the trial court demanded to receive some items for *in camera* review and then revisit petitioners' motion on November 18, 2021. That day, the trial court opened the hearing by explaining that it had reviewed the materials *in camera*

_____

[5] During the course of the trial-court proceedings, Kenneth changed counsel several times, so no single attorney could be blamed for all of the transgressions.

and concluded that "I didn't see anything that, as a lawyer, I wouldn't have produced." After that, the trial court discussed the materials it had reviewed and then observed: "I don't know why we're doing this [because] the litigation that this is creating based on a sometimes questionable objection on relevance grounds is just enormous and wasteful." Noting that "the relevancy objection is really costing us way too much and slowing us down way too much[,]" the trial court implored Kenneth to abandon an expansive view of personal information and give most of the materials to petitioners.

Remarkably, because of objections, the order memorializing the trial court's November 18, 2021, ruling was not entered until the trial court conducted a hearing on April 11, 2022. The order as entered stated "that 'relevance' shall no longer be a valid objection to producing ESI obtained from the forensic imaging . . . with the exception of any data that contains sensitive material such as photographs of minors, off-color jokes, and credit-card information for cards that Kenneth Hall and Bethany Hall currently use and possess." In addition, the order made clear that "all data from the electronic devices and web-based email accounts that is being withheld by Kenneth Hall must be identified on privilege logs with reasonable specificity[.]" Beyond that, the order directed that all "ESI previously withheld for relevance reasons, which does not contain sensitive material as described above, must be produced by Kenneth Hall to Petitioners."

Having settled the order, the trial court took up petitioners' motion for discovery sanctions and found that Kenneth, by removing data from the HP 600 and transferring it to a USB drive, had failed to take reasonable steps to preserve data and, in fact, had taken steps to delete it. Similarly, the trial court found that Beth's disposal of her old iPhone mere days after being explicitly told to preserve any electronic-communication devices constituted a discovery violation. As a sanction, based upon MCR 2.313(D)(2)(b), the trial court ruled that the jury would be instructed that it may presume that the information lost would have been unfavorable to Kenneth. In deciding to impose that sanction, the trial court explained that it was denying petitioners' request for the more drastic penalty of a default judgment under MCR 2.313(D)(2)(c). As a result, when the hearing concluded on April 11, 2022, the dispute over the characterization of the house was still at issue.

On July 18, 2022, the trial court conducted the final hearing on discovery, prompted by yet another motion from petitioners for discovery sanctions. Petitioners' motion laid out the long train of discovery abuses perpetrated by Kenneth and his counsel. Petitioners also asserted that Kenneth and his counsel had recently "stopped responding to emails pertaining to scheduling of depositions and also stopped any effort to comply with [trial-court] orders requiring the production of ESI and other discovery[.]" Still without meaningful privilege/objection logs and "the lion's share" of ESI that Kenneth had steadfastly refused to produce, petitioners insisted that a default judgment should be granted as to their petition for limited supervision to approve the proposed plan of distribution. After holding a lengthy hearing, the trial court agreed. Specifically, the trial court faulted Kenneth for objecting to disclosure of ESI as "personal correspondence," "private conversation," "image file," "contact," and "potential copyright." The trial court further noted that the privilege/objection logs still lacked any reasonable specificity that would allow a reader to understand why Kenneth's objections were valid. The court admonished Kenneth's counsel, stating:

> [T]ell me . . . how this complies with my orders? This makes no sense, Mr. Trust, that I should see something like this at this point in the proceedings after everything that's gone on. I don't understand how I could see an objection like "private conversation." It makes absolutely no sense to me. Explain that one for me, please.

Kenneth's attorney said he did not receive the written order memorializing the court's rulings from the November 18, 2021, hearing until May 17, 2022, but after that he followed the order. The trial court was displeased because Kenneth's counsel eventually conceded he knew what was required of him at the time of the hearings on November 18, 2021, and April 11, 2022. As a result, the trial court found "an absolute failure" by Kenneth and his counsel to comply with the August 11, 2021, and November 18, 2021, directives to provide enough specificity to any objection. The court noted that it had already issued numerous sanctions against Kenneth in the forms of monetary penalties and a spoliation instruction due to Kenneth's failure to comply with discovery. The court described the actions of Kenneth and his counsel as willful, so the court concluded that because those actions involved flagrant and wanton refusal to facilitate discovery, entry of a default judgment pursuant to MCR 2.313(B)(2)(c) was the appropriate sanction.

We recognize that, although MCR 2.313(B)(2)(c) authorizes a trial court to enter an order "rendering a judgment by default against a party who fails to obey an order to provide discovery[,]" the court "should carefully consider the circumstances of the case to determine whether a drastic sanction" such as the entry of a default judgment is appropriate. *Bass v Combs*, 238 Mich App 16, 26; 604 NW2d 727 (1999). The record should reflect that the trial court gave careful consideration to all of the factors involved and considered all of its options "in determining the sanction that was just and proper in the context of the case before it." *Id*. "Ultimately, the court's chosen discovery sanction must be proportionate and just." *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 662; 819 NW2d 28 (2011) (quotation marks and citation omitted).

"Before imposing the sanction of a default judgment, a trial court should consider whether the failure to respond to discovery requests extends over a substantial period of time, whether an existing discovery order was violated, the amount of time that has elapsed between the violation and the motion for a default judgment, the prejudice to [parties seeking the sanction], and whether willfulness has been shown." *Thorne v Bell*, 206 Mich App 625, 632-633; 522 NW2d 711 (1994). Each of those considerations supports the default-judgment sanction imposed on Kenneth. First, Kenneth's failure to comply with his discovery obligations extended over years. Second, Kenneth violated at least two discovery orders. Third, many months elapsed between his violations and the entry of a default judgment. Fourth, petitioners were severely prejudiced because, in spite of their persistent efforts, they could not obtain most of the ESI to which they were entitled. Finally, the trial court found that Kenneth's discovery violations were willful and wanton.

Michigan law counsels that the trial court "should evaluate other options before concluding that a drastic sanction [such as a default judgment] is warranted." *Id*. at 633. Here, the trial court at first imposed no sanctions and then imposed lesser sanctions, such as financial penalties, before ultimately turning to the drastic sanction of a default judgment. Additionally, the sanction of entry of a default judgment "should be used only when there has been a flagrant and wanton refusal to facilitate discovery." *Id*. Before entering a default judgment at the hearing on July 18, 2022, the trial court found that Kenneth and his counsel displayed willfulness rising to the level of a flagrant and wanton refusal to facilitate discovery. The record bears out that conclusion. Accordingly, the trial court did not abuse its discretion in imposing the drastic sanction of a default judgment based upon the persistent, willful, egregious discovery violations committed by Kenneth and his counsel. Indeed, it is emphatically the province and duty of the judicial branch to police and penalize abuses of the discovery process concerning ESI. The trial court quite appropriately did just that.

Kenneth also challenges the monetary sanctions imposed on him in two orders entered on June 14, 2021. First, the trial court imposed $3,248 in reasonable attorney fees and costs that arose from Kenneth's subpoena to John Clingerman of D4. Petitioners retained Clingerman as the third-party vendor charged with handling the ESI discovery. Kenneth issued a subpoena to him despite the clear language in MCR 2.302(B)(4)(b) that a "party may not discover the identity of and facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness" absent exceptional circumstances. Even if Clingerman could be regarded as a witness who might testify at trial, discovery concerning him would be limited to interrogatories to petitioners pursuant to MCR 2.302(B)(4)(a)(*i*) and a deposition of him under MCR 2.302(B)(4)(a)(*ii*). Consequently, the subpoena issued by Kenneth to Clingerman was entirely improper, so the trial court acted well within its discretion in sanctioning Kenneth for issuing the subpoena.

Second, the trial court ordered Kenneth to pay petitioners $4,071.85 in reasonable attorney fees and costs associated with petitioners' "motion to compel production of cell phone and review of deleted data report pursuant to ESI agreement and sanctions." The motion to compel concerned Kenneth's failure to timely provide a privilege log for the D4 report regarding the unallocated data retrieved from the HP 600 computer. The trial court invoked MCR 2.313(A)(5)(a) in imposing its monetary sanction upon Kenneth. Under that rule, if a motion to compel discovery is granted, the trial court may require the party "whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred as a result of the conduct and in making the motion[.]" The trial court here simply entered an order of monetary sanctions reflecting petitioners' costs resulting from Kenneth's refusal to take any meaningful action in response to the D4 report. To be sure, the D4 report turned out to be inaccessible because of its size, but Kenneth sat on his hands for months until petitioners' motion to compel spurred him to do something with the report.[6] Thus, the trial court did not abuse its discretion in sanctioning Kenneth under MCR 2.313(A)(5)(a).

## B. SUMMARY DISPOSITION

Before the trial court imposed the discovery sanction of a default judgment that cleared the way for a complete resolution of the dispute in petitioners' favor, the trial court awarded petitioners partial summary disposition under MCR 2.116(C)(10). Specifically, on April 26, 2022, the parties presented arguments on their summary disposition motions. The trial court ruled from the bench in favor of petitioners and memorialized its ruling in a written order entered on May 4, 2022. That order makes clear "that Gregory Hall's spreadsheet, created on September 23, 2014 and modified on October 13, 2017, and entitled 'Gregory M. Hall – Assets + Annuities as of October 13th 2017,' meets the statutory definition of a contemporaneous writing pursuant to MCL 700.2608(1)(b), as applied to trusts pursuant to MCL 700.7112, and an amendment to the Gregory Hall Trust pursuant to MCL 700.7602(3)(a) and Article IV of the Trust." But by its own terms, the order reserved "the question of fact which shall be submitted to the jury" as to "whether Gregory Hall intended the 'distribution' of the 'Rochester Home' as reflected in the spreadsheet in the amount of $500,000

---

[6] John Clingerman later testified that the solution to the problem is an "easy" fix: D4 would break the single, large file into more manageable components. But no one ever notified Clingerman that there was a problem, so the matter festered for months.

to be an advancement of Kenneth Hall's distributive share of the Trust." Therefore, the trial court's summary disposition award to petitioners was only partial. Its ruling left open an important matter for resolution at trial.

The competing parties have presented thorny issues concerning our jurisdiction to consider the award of partial summary disposition on Kenneth's appeal of right under MCR 5.801(A). We need not sort out those complicated issues, however, because the trial court accompanied its entry of default judgment as a discovery sanction with an order granting the petition filed by petitioners for limited supervision to approve the proposed plan of distribution. That plan, which was attached as Exhibit E to the petition, effectively resolves the dispute about the treatment of Gregory's house as a $500,000 advancement received by Kenneth. Since we have upheld the trial court's discovery sanction of a default judgment resulting in approval of petitioners' proposed plan, the trial court's award of partial summary disposition to petitioners is no longer of any moment. Accordingly, our analysis on appeal shall not include a review of the summary disposition award.

Affirmed. As the prevailing parties, petitioners may tax costs pursuant to MCR 7.219(A).

/s/ Christopher P. Yates
/s/ Christopher M. Murray
/s/ Michael J. Riordan